(33 App. Div. 287.)

## LOUIS v. BAUER, et al.

(Supreme Court, Appellate Division, First Department. October 7, 1898.)

1. MORTGAGES—PAYMENT—APPLICATION—EVIDENCE.

To secure a loan of $5,000 to a bank, defendant executed a deed to it of rented property, to be returned on repayment of the loan. The bank was authorized to collect the rents, which it did from 1891 to 1896, collecting in all $11,400, and during that time it paid $4,499.99 for interest on a mortgage on the property, on which foreclosure was commenced, and taxes and repairs. Defendant had three accounts with the bank, and the rents, as collected, were credited on one or other of them, and used to meet current charges. Subsequently the bank suspended, at which time defendant owed to it more than $53,000, the only security for which was a deed to the rented property, and bonds worth about $21,000. Defendant claimed that the $5,000 loan was paid by the rents collected. There was no express agreement as to what should be done with the rents. Defendant testified he did not inquire into or know what became of the rents, and had no knowledge they were used to pay his overdrafts. During the time the rents were collected and applied to his active bank accounts, his bank books were regularly balanced, and showed the application thereof. One of the bank directors testified that he had held repeated conversations with defendant in which the application of the rents was discussed. In a letter to the bank in 1895, defendant stated that he had been paying a specified amount of interest annually on his debts for four or five years, which amount included the rents. *Held*, that the application of the rents to defendant's several accounts was with his knowledge and consent, and the $5,000 secured by the deed was unpaid.

2. SAME—RIGHTS OF SUBSEQUENT LIENORS.

The application of rents received from property held as security for the payment of a debt, with consent of the mortgagor, in payment of unsecured debts, is binding on subsequent judgment lienors.

3. SAME—RIGHT OF SUBROGATION.

A mortgagee is entitled, by subrogation, to a lien for the amount paid to stop a foreclosure suit on a prior mortgage; the right not being relinquished, although the mortgagor's note was taken for the amount.

Appeal from judgment on report of referee.

Action by Amelia E. Louis, as administratrix of the estate of Alexander Louis, deceased, against Moritz Bauer, and Edward H. Hobbs and Benjamin B. Odell, Jr., as receivers of the Murray Hill Bank, and others, to foreclose a mortgage. From an order of the special term confirming a report of a referee, and directing the distribution of the surplus money, Edward H. Hobbs and Benjamin B. Odell, Jr., appeal. Reversed.

Appeal by Edward H. Hobbs and Benjamin B. Odell, Jr., as receivers of the Murray Hill Bank, from an order of the special term confirming the report of a referee, and directing the distribution of certain surplus moneys. The surplus distributed by the order appealed from arose upon the foreclosure of property situated at the southwest corner of 3d avenue and 158th street, in the city of New York, which was owned by the defendant Bauer, and by him leased to the mayor, aldermen, and commonalty of the city of New York for use as a court house. The respondents are judgment creditors of Bauer. The appellants' claim is principally founded upon a deed of the property to the president of the bank executed January 31, 1884. There is no proof that this deed was delivered until January 31, 1887. On that day the cashier of the bank delivered to Bauer a paper in the following words: "Received from Moritz Bauer deed dated Jany. 31, 1884, of property Cor. 3d Ave. & 158th St., New York City, as collateral security for five

thousand dollars. On payment of above five thousand dollars said deed to be returned and this receipt canceled, and his note now included in his line of discounts will be canceled for said amount of five thousand dollars." Between November 1, 1891, and May 1, 1896, the city, by Bauer's authority, paid the rent of the property to the bank. It amounted in all to $11,400, out of which the bank paid $4,499.99 for interest on mortgage, taxes, and repairs. During this period Bauer had three accounts with the bank, and the rents were deposited with one or the other of them, and used to meet current charges. At the time the bank suspended one of these accounts showed a balance in Bauer's favor of $480.22, but the others were overdrawn,—one for $61, and the other for $33.60. At the date of suspension, Bauer owed the bank over $53,000, the only security for which was the deed of the court-house property, and bonds of the Mt. Morris Electric Light Company, of the par value of $44,000, and worth between 60 and 70 cents on the dollar. Further facts are stated in the opinion.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, O'BRIEN, and McLAUGHLIN, JJ.

William C. Breed, for appellants.

Samson Lachman, for respondents.

BARRETT, J. The correctness of the decision below does not depend upon the solution of the question so elaborately discussed by counsel, namely, whether the definite sum specified in the receipt which accompanied the delivery of the deed could be extended by a subsequent parol agreement between the parties. It may be assumed for the purposes of this discussion that it could not. And it may also be assumed that, even if it could, the evidence of such extension was insufficient to justify a finding to that effect. The real question is whether the definite sum so specified in the receipt has actually been paid. The burden of proof of such payment was clearly upon the respondents. They furnished no direct evidence thereof. What they claimed was that payment was effected in law by the bank's receipt and proper application of the rents subsequently assigned to it. This, too, is undoubtedly what the learned referee meant when he found as a fact "that the Murray Hill Bank was repaid the amount mentioned in said letter, to wit, $5,000"; the letter here referred to being the paper to which we have attributed the character of a receipt. There could be no question that the parties could agree by parol upon the due application of these rents. They stood upon an entirely different footing from the equitable mortgage effected by the deed and receipt. To extend such a mortgage by parol would be one thing. To agree upon the application of the rents was quite another. The appellants claim that the original loan of $5,000 was not paid by the receipt of these rents, for the reason that the latter were applied to other purposes, under an agreement which the parties were perfectly competent to make. If such an agreement is made out, either expressly, or by implication resulting from the understanding of the parties and the course of dealing between them, then the respondents' rights are subject thereto. Bauer, it is true, would probably have had the right to insist that the rents should be applied in liquidation of that part of his indebtedness to the bank which was secured. Pond v. Harwood, 139 N. Y. 111, 34 N. E. 768. But, if he chose to use the money in some other way, there was nothing to prevent his doing so.

It was his money. The respondents had no lien upon or interest in it. They obtained no title to the land of their judgment creditor. Bank v. Farthing, 101 N. Y. 344–348, 4 N. E. 734. They could sell his interest in the land, but even then his right to receive the rent, as formerly, remained until the expiration of the period for redemption. Code Civ. Proc. §§ 1440, 1441. The money coming from the rents remained Bauer's throughout, and he was at liberty to pay with it any debt of his which he might select. The respondents' liens were upon the equity of redemption, and these liens were subordinate to that of the bank for the original $5,000, and remained so until the latter sum should be extinguished in the ordinary manner; that is, by payment.

The question whether Bauer agreed that the rents should be applied to some other purpose than the payment of the $5,000 in question involves the consideration of the evidence. There is no proof of any express agreement at the outset as to what should be done with these rents. The bank in fact deposited them in three accounts which Bauer had, and used them, wherever advantageous, to pay charges against him. An account marked, "Moritz Bauer Account, 158th Street Court House," was opened on December 19, 1895. In this the rents were thereafter deposited, and overdrafts from the other accounts were charged against it. Before this date the rents were placed to the credit of the other accounts, and used like any of Bauer's deposits. It is thus clear, so far as the proof goes, that the rents were not used to pay this specific $5,000 loan. It is not pretended that Bauer protested against this, or signified his disapprobation in any way. He says that he did not inquire, and did not know, what was being done with the rents, and that he had no knowledge that they were used to pay his overdrafts. It is difficult to credit this testimony. If we are to believe it, during a period of four years and a half the bank received many thousands of dollars of Bauer's money, about the disposition of which he never took the trouble to inform himself. It is clear that he had ample notice of what was being done. For two or three years prior to the opening of the court-house account in December, 1895, his active account with the bank was that one known as the "special account," and a large part of the rents must have been deposited in it. He admits that this account was regularly balanced, and the bank's evidence shows that it was balanced as late as August, 1895. The entries in this account apprised, or should have apprised, Bauer of all of which he now claims to have been ignorant. As he himself testifies:

"If I looked it up, I knew whether any of the moneys that came from the rent went to the special account. When my bank book was balanced, I ought to know whether it went onto that special account or not."

The book also informed him with the same definiteness as to what charges were made against the rents. That Bauer made no inspection of his bank books during all this period seems quite incredible, and, if so, it was negligence for which the bank ought not now to be held responsible. Bauer's testimony is directly contradicted by that of Heimburg, one of the directors of the bank. The latter states:

"I had repeated talks with Mr. Bauer as to how the rents of the real estate were being applied. * * * Mr. Bauer told me whenever either' of the accounts should be short the rents should be applied to either one of them; and he often said, 'In about two weeks you will have $650 again, when the rent becomes due from the city.' Q. And either account that would be short, you could apply the rent to? A. Yes, sir."

The whole situation of the parties lends great weight to this testimony. Bauer was in constant need of money, and kept soliciting the bank to make him advances. He also repeatedly overdrew his accounts. In the end he owed the bank over $50,000, for which the security was quite insufficient. His account was a source of anxiety to the bank, which was trying to protect itself. Among other things, the bank officials endeavored without success to get Bauer to execute an instrument making the equity in the court-house property security for his general indebtedness. It is most improbable that the officers of the bank would have consented to allow the money derived from the rents to be applied to that small portion of his debt which was abundantly and overwhelmingly secured. That Bauer could ever have entertained such an idea is also most improbable. That he did not is demonstrated by a letter dated July 19, 1895, which, though unsigned, was prepared and acknowledged by Bauer, and acted upon at a meeting of the directors of the bank. In it he said:

"I am paying $3,000 a year net interest [this sum included the rents], which is 6 per cent. on my whole indebtedness; and as this has been the case for the last four or five years, without increasing my debt one dollar, it is plain enough that those interests are applied out of the income of my property, to the contrary I have decreased the same by paying off $500 recently. Said account, which is now overdrawn by a few hundred dollars, will have a good surplus on the 1st of September by collecting $650 on the 1st of August, as quarterly rent on my real estate, and interest on the bonds."

This letter conclusively shows his own understanding that the rents were being used to reduce the interest on the debt. His present testimony to the contrary cannot be credited. It is not only shaken in the particulars to which we have referred, but it is in conflict with testimony which he gave in supplementary proceedings in 1893, and with that of numerous officers of the bank. In one particular he is refuted by another letter which he himself wrote in May, 1887; and it is a significant circumstance that he was formerly a partner of the respondent Marx, and has lived with him rent free for 15 years.

The result of our examination of this branch of the case is that, whether or not Bauer expressly and specifically agreed at the outset as to what should be done with the rents, they were applied as they were with his full knowledge and consent, and that the arrangement thus entered into is binding upon both him and the respondents. We think that it would be a fraud upon the bank now to allow the money to be diverted to another purpose. A different result would follow if there were proof that the rents were actually applied in payment of this particular loan, in whole or in part. But, as we have seen, the respondents rely, not upon proof of this sort, but upon the general right of Bauer, in the absence of any special agreement, to have the rents so applied. That right, however, was lost by the implied agreement resulting from the clear understanding and course of deal-

ing between the parties of which we have treated.    We also think that the bank was entitled, in any event, to prior payment of the sum of $4,018.15 advanced to Bauer in March, 1892.    At this time the plaintiff had begun a foreclosure action; and the bank, at Bauer's request, paid this sum (which was the amount then due), and stopped the suit.    It had the right to prior payment of this sum out of the surplus, under the rule that one who redeems a security is entitled to be subrogated thereto, whether or not a special agreement to this effect is made.    Gans v. Thieme, 93 N. Y. 225.    It is immaterial that the bank took Bauer's note for the amount.    There was no agreement, express or implied, to relinquish the right of subrogation given by law.    The bank merely took tangible evidence of Bauer's liability, —a liability the retention of which was entirely consistent with their right of subrogation.    Those views necessitate a reversal.    The other questions discussed need not now be considered, as they are not likely to arise upon a rehearing.

The order appealed from should be reversed, the exceptions to the report sustained, and a rehearing ordered before another referee, with costs to the appellants to abide the event.    All concur.