In the Matter of the Estate of EDITH H. KITCHING, Deceased.

Surrogate's Court, Kings County, November 2, 1931.

*Charles F. Edsall*, for the executor.

WINGATE, S. The questions here raised chiefly concern the relative rights of certain alleged assignees of the distributive shares of the residuary legatees of this decedent.

The will, which is the basis of the present accounting, was admitted

to probate in this court on September 29, 1928. After directions for payment of debts, etc., it gave the entire remainder of the estate on certain contingencies which have occurred, to Frederick McHenry Kitching and Dorothy Kitching St. John. Under date of October 20, 1928, F. McH. Kitching executed two notes, the first in the sum of $100, and the second of $225, respectively, to Meyer C. Ellenstein and Emanuel Lebovitz, and simultaneously wrote the executor inclosing copies of the notes and requesting that they be paid from his interest in this estate.

The copy of the first note, with such request, was received by the executor on October 23, 1928, the latter two documents reaching him three days later. Under date of October 26, 1928, this legatee executed a power of attorney to Morris and Samuel Meyers, attorneys at law, authorizing them to represent his interests herein, and under date of January 16, 1929, executed with such attorneys a further agreement, in which he agreed that their compensation for the services rendered and to be rendered should be, *inter alia*, twenty-five per cent of the legatee's gross interest in the estate.

On November 22, 1929, Kitching issued an order on the executor to pay to David T. Nelson the sum of $425 from his distributable share in the estate; and, finally, on or about May 23, 1930, a receiver in supplementary proceedings was appointed for him.

According to the figures in the account, to which no objection has been interposed, the net estate in the hands of the executor, subject to payment of commissions, attorneys' fees and other administrative charges, amounts to $1,499.04.

Before proceeding to determine the rights of the several assignees and creditors in the distributable share of this legatee, it will be of advantage to pass upon the application of the accountant for counsel fees for services rendered by him to the estate. The sum which he asks is $500, which, in view of the fact that the gross estate amounted only to $2,039.04, appears to be disproportionately large. In support of his application he has presented a lengthy and detailed statement of his services, which indicates the expenditure of a very considerable amount of time. Analysis thereof, however, demonstrates that by far the greater portion thereof was devoted to a proceeding in the Supreme Court affecting a trust *inter vivos* which had no necessary relation to the administration of this estate. The provisions of the trust deed there involved were, in substance, a reservation of a life estate to the settlor, who was the testatrix herein, with remainder over to such persons as she might appoint by will. Obviously, the probate of the will fixed the remaindermen of the trust; for which purpose the will as probated would be read into the trust instrument, and such

was the determination in the Supreme Court. The only interest of the estate, as such, in the trust fund was by reason of the latter being entitled to the accrued income under the trust up to the time of the settlor-testatrix's death. This right, it has been admitted, was at no time the subject of contest. Any services, therefore, rendered by the attorney in connection with the construction of the trust deed, were of necessity rendered on behalf of the legatees under the will in their capacity as remaindermen of the trust *inter vivos*, and bore no proximate relation to the estate herein.

Under all the circumstances disclosed, it is deemed that an allowance to the attorney of $300, to include all services to and including the entry of the decree on this judicial settlement, is liberal and just, and his compensation is fixed at such sum.

The commissions to which he is entitled under section 285 of the Surrogate's Court Act amount to $100.98, thus giving a total sum payable to the executor-attorney in both capacities of $400.98.

As the net estate accounted for amounts to $1,499.04, this leaves for distribution a net total sum of $1,098.06, distributable, $549.03 to Frederick McHenry Kitching and a like sum to Dorothy Kitching St. John.

Approaching now the question of the rights of the alleged assignees in the several distributable sums, it is fundamental that the mere making of an assignment, whether written or verbal, operates from the time of its making *pro tanto* to divest the interest of the assignor, irrespective of notice thereof to the principal debtor. (*Callanan* v. *Edwards*, 32 N. Y. 482; *Columbia Bank* v. *Equitable Assurance Society*, 61 App. Div. 594, 597, 598; *Doughty* v. *Weston*, 90 Misc. 304, 305; *Matter of Kloppenburg*, 134 id. 168, 172; affd., 227 App. Div. 739.)

In *Williams* v. *Ingersoll* (89 N. Y. 508) the Court of Appeals said (at p. 523): "In *Muir* v. *Schenck* (3 Hill, 228), it was held that as between different assignees of a chose in action by express assignment from the same person, the one prior in point of time will be protected, though he has given no notice to either the subsequent assignees or the debtor, and the question between a previous assignee and a subsequent attaching creditor was considered the same in principle as that between conflicting assignees. However much that case may have been criticized elsewhere it has been considered well decided in this State."

If none of the successive assignments be recorded, as permitted by section 32 of the Personal Property Law, their priority is governed by the dates thereof respectively, but if a later assignment is received by the assignee without notice of prior assignments and

is recorded pursuant to the terms of such section before the recording of an earlier assignment, the one first recorded will take precedence. (*Matter of Kloppenburg, supra,* 171, 172.)

Since none of the assignments in the case at bar were recorded, it is obvious, under the authorities above cited, that they are entitled to be honored in the order in which they were given.

The assignments to Ellenstein and Lebovitz, aggregating $325, purport to have been made on the same day, and in the absence of any demonstration as to the one which was first given, they must rank co-ordinately. Obviously, there are funds with which to satisfy both, so that the actual priority of one over the other is of no moment.

It is contended on behalf of Morris and Samuel Meyers that their general retainer, dated October 26, 1928, was in reality a transaction simultaneous with the two assignments noted. This has not been established, and even if it had been, its terms in no way effect a legal or equitable assignment of the fund to which the legatee was entitled. As noted, the agreement of retainer was merely general in its nature, and, therefore, gave rise only to an attorney's lien, which, on ordinary principles, is for the reasonable value of the services rendered. (*Ward* v. *Craig,* 87 N. Y. 550, 559; *Matter of Abruzzo,* 139 Misc. 559, 562, 563.) It is familiar law that a retainer agreement providing for a fixed compensation to the attorney or a specified percentage of the recovery, amounts to an equitable assignment to the extent therein stated (*Fairbanks* v. *Sargent,* 117 N. Y. 320, 329; *Lynch* v. *Conger,* 181 App. Div. 221, 224, and see *Matter of Leverich,* 135 Misc. 774, 783, 784; unanimously affd., 234 App. Div. 625), but no such case is made out on behalf of the initial retainer of these claimants. It must follow, therefore, that in order to give the recovery of the attorneys under this agreement priority to, or parity with, the first two assignments it would have been necessary for them to give proof from which the reasonable value of their services could be determined. No such proof was offered.

The subsequent retainer agreement, which specified that the attorneys should receive twenty-five per cent of Frederick's legacy, is, however, on a different basis, and to the extent of the twenty-five per cent of the gross recovery therein specified amounts to an equitable assignment on the authorities cited. Since this was executed and acknowledged on January 16, 1929, it obviously takes precedence over the subsequent legal assignment to David T. Nelson made on November 29, 1929, and further takes precedence over the rights of the receiver in supplementary proceedings so far as any showing made before the court can determine.

Section 809 of the Civil Practice Act provides that a receiver in supplementary proceedings is vested with the property of the judgment debtor from the time of the filing of the order appointing him, which, in this case, appears to have been on May 23, 1930.

It has further been held that such receiver is vested only with such property as the judgment debtor possessed at the time of the commencement of the supplementary proceedings. (*Dubois* v. *Cassidy*, 75 N. Y. 298, 302; *Masten* v. *Amerman*, 51 Hun, 244, 246; *Matter of Leverich*, 135 Misc. 774, 782; unanimously affd., 234 App. Div. 625.) The date of the institution" of such proceedings against Kitching has not been made to appear, and since the burden of proof was on the receiver to establish his right to priority over the legal and equitable assignments of the other claimants, it must be held to be inferior to them, as the considerably later date of the appointment of the receiver would indicate to be the fact.

Under date of February 20, 1929, the other legatee under the will, Dorothy Kitching St. John, executed a retainer agreement with the same attorneys by the terms of which they were to receive twelve and one-half per cent of the gross sum payable to her under the terms of the will. This is the only claim which has been filed against her legacy.

The distribution of the funds in the hands of the executor will, therefore, be as follows: He will pay to himself the sum of $400.98 in full of his commissions and of all services rendered and to be rendered in connection with the estate. From the sum remaining in his hands to the account of F. McH. Kitching he will first pay $100 to Meyer Ellenstein and $225 to Emanuel Lebovitz. He will then pay $137.26 to Morris and Samuel Meyers, and the balance of $86.77 to David T. Nelson.

From the fund amounting to $549.03 in his hands distributable to Dorothy Kitching St. John, he will pay $68.63 to Morris and Samuel Meyers and the balance of $480.40 to Dorothy Kitching St. John.

Proceed accordingly. ▬▬▬▬▬▬