In the Matter of the Estate of Rose Agnes Lynch, Deceased.

Surrogate's Court, Kings County, May 18, 1934.

*James P. Collins,* for the petitioner.

*Joseph M. O'Shea,* special guardian.

*Arthur L. Kraut,* for Montgomery Ward.

*Schwartzberg & Mozor,* for Somers & Couzen Coal Corporation.

*Robert Leon Horn,* for Chester Neal Company.

*Raymond J. Kinnere,* for John Wanamaker.

*Ernest M. Morrison,* for Otto Wissner, Inc.

*W. J. McArthur,* for the Peoples Loan and Investment Company.

WINGATE, S. The reasonably extended experience of the court has failed to encounter an instance in which a minor testamentary beneficiary has succeeded in involving his creditors and himself in a legal maze quite comparable with that here disclosed.

For reasons best known to themselves, none of the multitudinous counsel in the proceeding has undertaken to play the role of Ariadne

in the guidance of the court out of the present legal labyrinth, leaving it to blunder along to a goal as best it may. The sole contribution of legal lore which has been vouchsafed for its guidance is the citation of two of its own recent decisions with which it may be presumed to possess at least a passing familiarity

Testatrix died on March 30, 1933, leaving a modest estate, which, however, has proved insufficient to solve in full the bequests contained in the will, in consequence of which a partial abatement is unavoidable. Among the provisions of her will was the following: " I give and bequeath to my Executrix the sum of Five thousand five hundred Dollars ($5,500.00) in trust, to keep invested, collect the income and pay from said principal and income, the sum of One hundred Dollars ($100.00) per month to my nephew, Edward J. Matthew, for and during the term of his natural life, and after his death, I give and bequeath the remainder of said sum with any accumulations to his wife, Marie Matthew and their children, or the survivor of them, share and share alike."

This testamentary benefit the *cestui que trust* has purported to assign no less than seven times during a period of eight months. Some of these assignments have been recorded as permitted by law and some have not. To cap the climax, another creditor has intervened with an injunctive third party order against the trustee. The task of the court in this welter of conflicting claims is to determine who is entitled to what, and why.

The consideration of the problems precipitated by the actions of the life tenant will be clarified by a partial consideration of the rights and limitations of the gift under the terms of the will. The direction obviously contemplates the erection of a trust, wherefore the provisions of section 15 of the Personal Property Law apply in spite of the authorization attached to the gift for a limited invasion of the principal. (*Cochrane* v. *Schell*, 140 N. Y. 516, 535; *Herzog* v. *Title Guarantee & Trust Co.*, 177 id. 86, 100; *Matter of Ungrich*, 201 id. 415, 419; *People's Trust Co.* v. *Flynn*, 106 App. Div. 78, 83.) It follows, from the wording of the statute, that " the right of the beneficiary to enforce the performance of " the " trust * * * cannot be transferred by assignment or otherwise." (*Bergmann* v. *Lord*, 194 N. Y. 70, 75; *Matter of Ungrich, supra.*) As was pointed out by the Court of Appeals in *Tolles* v. *Wood* (16 Abb. N. C. 1, 9; reported by memorandum only, 99 N. Y. 617): " The disposition of such an income cannot be anticipated by the *cestui que trust* or encumbered by any contract entered into by him providing for its pledge, transfer or alienation previous to its accumulation."

The rule, however, applies only to future payments. The moment any sum becomes payable to the beneficiary, it is his

vested property and can be freely alienated by him in like manner with any other possession of which he is the absolute owner. (*Matter of Oakley*, Foley, S., 116 Misc. 494, 495; affd., 207 App. Div. 811; *Matter of Valentine*, 5 Misc. 479, 483; *Matter of Goldman*, 142 id. 790, 793.) (See, also, *Heise* v. *Wells*, 211 N. Y. 1, 8.)

As to any attempted transfer of future income, a purported assignment thereof, as pointed out in the *Goldman* and *Oakley Cases* (*supra*), amounts merely to a direction for payment of the several future sums as they accrue. Any such direction, however, is " subject to revocation by the beneficiary at any time in respect to payments not made prior to such revocation." Any payments of future income actually made by the trustee after their accrual, pursuant to such an unrevoked order are, in essence, paid to the authorized agent of the beneficiary and furnish a *pro tanto* discharge of the obligations of the trustee.

It is, of course, primary that subject to any pertinent recording acts, an assignment is a conveyance which vests in the assignee the property owned by the assignor and embraced in the terms of the instrument (*Sanders* v. *Soutter*, 136 N. Y. 97, 99; *Weniger* v. *Fourteenth Street Store*, 191 id. 423, 427; *Field* v. *Mayor, etc., of New York*, 6 id. 179, 186), although the debtor will, on equitable principles, be protected in paying the assignor if the thing assigned was nonnegotiable and he had no notice of the assignment. (*Heermans* v. *Ellsworth*, 64 N. Y. 159, 161.)

The final pertinent principle deserving of present notice is that, under the terms of this trust, the life tenant became entitled to the monthly payments beginning with testatrix's death. (*Cooke* v. *Meeker*, 36 N. Y. 15, 22; *Matter of Stanfield*, 135 id. 292, 294; *Matter of Harden*, 177 App. Div. 831, 838; affd., 221 N. Y. 643; *Matter of Wolfman*, 137 Misc. 325, 327; *Matter of Taft*, 143 id. 387, 391.)

Approaching a solution of the present problems from a chronological sequence, it appears by an application of the last noted principle that on July 1, 1933, which was more than three months after testatrix's death, the beneficiary possessed a vested interest in three of the directed monthly payments, aggregating $300. On that date he and his wife purported to assign to the Peoples Loan and Investment Company " all of the moneys, to wit: Twenty Four hundred ($2,400.00) Dollars remaining due to the parties of the first part at the rate of One hundred ($100.00) Dollars a month " under the will of this decedent.

The result of this instrument was to vest in the assignee (subject to divestment as hereinafter noted) the payments under the trust which had already accrued, totalling $300. It did not amount to

an assignment of any future installments by reason of the inhibitions of section 15 of the Personal Property Law, and as to them was merely a revocable authorization to the trustee to make payment of them to the assignee as and when they should become due.

Subsequent to this assignment, another payment fell due on July thirtieth, making $400 in all. As to this last $100 there was, of course, the revocable authorization to make payment to the Peoples Loan and Investment Company, and had the trustee acted in pursuance of the power thus granted, no one would have been heard to complain. This, however, she did not do, the entire sum having remained in her hands until the present time.

On July 7, 1933, Chester Neal Company recovered a judgment for $276.75 against the beneficiary on which it issued an order for his examination in supplementary proceedings. This appears to have been served on July twenty-ninth and an examination held on August eighth and apparently continued to and terminated on September twelfth. No receiver in supplementary proceedings appears to have been appointed. According to the affidavit of the creditor, the beneficiary testified on August eighth respecting his interest in this estate and stated, " I will notify Mr. Collins and my sister to pay you this judgment when the estate is distributed and you may notify them to the same effect."

Whereas it is well established that an assignment of a chose in action, other than a negotiable instrument, may be made by parol (*Thurber* v. *Chambers,* 66 N. Y. 42, 49; *Williams* v. *Ingersoll,* 89 id. 508, 521; *National Foundry Co. of N. Y.* v. *Kaufman,* 190 App. Div. 956; *Matter of Kitching,* 141 Misc. 704, 706), it is obvious that the conversation related lacked the essential elements necessary for this purpose. " To constitute a valid assignment there must be a perfected transaction between the parties intended to vest in the assignee a present right in the thing assigned." (*Donovan* v. *Middlebrook,* 95 App. Div. 365, 367.) (See, also, *Hinkle Iron Co.* v. *Kohn,* 229 N. Y. 179, 183; *Fairbanks* v. *Sargent,* 117 id. 320, 330; *Farmers Loan & Trust Co.* v. *Winthrop,* 207 App. Div. 356, 362; *Matter of Leverich,* 135 Misc. 774, 784; affd., 234 App. Div. 625.) Here there was no actual conveyance of any present right. As a result, this creditor presently received nothing except a promise for the performance of a future act, which, in view of all the circumstances disclosed, possesses no tangible market value.

On August thirtieth another $100 fell due, and as the matter then stood the Peoples Loan and Trust Company held an actual assignment of the $300 which had accrued prior to July first and was the possessor of an authorization to receive the $200 which had accrued subsequently.

On September fifth a new complication was injected into the situation by the delivery by the beneficiary to Otto Wissner, Inc., of an assignment of " the sum of $229.40, with interest thereon to be computed at the rate of 6% per annum from May 28th, 1917, until the date of payment, out of the interest " of the beneficiary in the estate.

After the giving of this assignment, but prior to the record of either this or the prior assignment to the Peoples Loan Company, the situation stood that the latter had a lien upon the $300 which had accrued up to the time of its assignment and the Wissner Company possessed a like right in the $200 subsequently accruing, since this second assignment operated as a *pro tanto* cancellation of the beneficiary's authorization to the trustee to pay the subsequently accruing sums to the Peoples Loan Company in view of the intermediate failure of the trustee to act upon it.

It will be convenient at this point to digress from the chronological recital of events to note that the assignment to the Wissner Company was recorded in this court on September 9, 1933, while that to the Peoples Loan Company was not recorded until March 14, 1934. The effect of this act was, in the absence of any demonstration that the Wissner Company was not a *bona fide* assignee for value, the burden of which was on the prior assignee (*Matter of Leverich*, 135 Misc. 774, 790; affd. on opinion of this court, 234 App. Div. 625; *Leask* v. *Hoagland*, 64 Misc. 156, 165; revd. on other grounds, 136 App. Div. 658), to give precedence to the Wissner assignment so far as might be necessary for the satisfaction of its claim to the full extent of the $500 which had accrued up to the time it was given. (Pers. Prop. Law, § 32; *Matter of Kloppenburg*, 134 Misc. 168, 172; affd., 227 App. Div. 739; *Van Buren* v. *Wensley*, 102 Misc. 248, 257; *Matter of Kitching*, 141 id. 704, 707.)

Nothing further occurred between September ninth, the date of record of the Wissner assignment, and December fifth, except the accrual of three more installments of $100 each. The situation then stood that the Wissner Company had a perfected right to the first five accrued payments as far as they might be required for the solution of its obligation, and the Peoples Loan Company had an assignment subject to divestment in any excess amount in this sum over the amount necessary to pay the Wissner claim and also a revocable authorization to receive the payments which had accrued in September, October and November.

On December fifth the beneficiary assigned to Ernest Morrison forty-eight dollars and five cents, with interest from October 26, 1933, from his interest under the trust. This, of course, did not affect the vested rights of the Wissner Company in the first five

payments or the contingently vested interest of the Peoples Loan Company in the overplus, if any, of the first three, but gave the new assignee a *pro tanto* contingently vested interest in the next three payments, leaving to the Peoples Loan Company an authorization to receive the excess thereof.

On December 20, 1933, " Edward J. Matthew and Marie Matthew (wife) heirs in the estate of Rose A. Lynch, deceased," for a stated consideration of $450, assigned to Alfred G. Dorsch " any and all sums of money now due or to grow due upon the annexed account, or upon the accounting of inheritance therein mentioned." No account was annexed, and there is nothing in the body of the instrument or attached thereto which indicates the subject-matter intended to be assigned. It is entirely true that the assignment purports to be made by " Edward J. Matthew and Marie Matthew (wife) heirs in the estate of Rose A. Lynch, deceased," but the words following the parenthesized " wife " are merely *descriptio personarum*, adding nothing to the conveyance.

It is primary that " nothing passes by a deed except what is described in it, whatever the intention of the parties may have been." (*Coleman* v. *Manhattan Beach Im. Co.*, 94 N. Y. 229, 232; *Matter of City of New York* [*Lawrence Ave.*], 99 Misc. 24, 27.) Whereas, therefore, the defect in this instrument might have been remedied as between the parties if no one else were involved, it cannot, under the circumstances here disclosed and in the absence of any proof other than the bare presentation of the document itself, affect the rights of either prior or subsequent assignees. The instrument itself being worthless for any present purpose, its record in this court on January 8, 1934, did not alter this situation.

On December thirtieth another $100 payment accrued, and on January 22, 1934, the beneficiary assigned to John Wanamaker, New York, " all the moneys due on account of the legacy to the extent of $101.50."

The situation after the giving of this assignment was as follows:

Otto Wissner, Inc., held a vested lien on the first five payments to the extent of $229.40, with interest from May 28, 1917, to the date of payment.

Peoples Loan and Investment Company held a contingently vested lien on the balance of the first three payments not necessary for satisfaction of the Wissner claim. It also possessed an authorization for payment from the payments accruing subsequent to the first five, in so far as such authorization was not revoked by subsequent assignment.

Morrison held a contingently vested lien to the extent of forty-eight dollars and five cents, with interest from October 26, 1933, on

the sixth, seventh and eighth payments, which would take precedence over the Peoples Loan authorization.

Dorsch had nothing.

Wanamaker possessed a primary claim on the ninth payment and a secondary one on the sixth, seventh and eighth, to the extent of $101.50.

On February thirteenth the beneficiary assigned to Arthur L. Kraut, as attorney for Montgomery Ward & Co., the sum of $76.12 " from the first moneys due to the undersigned from the estate." Since a tenth payment of $100 had accrued in the interval, this became a first lien thereon. It is unnecessary further to investigate the rights of this claimant, since this sum is sufficient to satisfy its claim.

On February sixteenth a third party order was served on the trustee " forbidding her to transfer, or make or suffer any disposition of any property belonging to Edward J. Matthew," which injunctive order is stated to be still in force. It, therefore, becomes of importance to determine what property in the hands of the trustee so belonged to the judgment debtor at the time of such service.

On the authorities hereinbefore cited, the several successive assignments, in so far as they were valid instruments, and this applies to all except the Dorsch assignment, conditionally vested in the respective assignees the several amounts assigned in so far as they represented sums to which the assignor possessed a matured present right. In the absence of the recording of any such assignment, their holders would be entitled to be paid in the order of their granting. (*Fortunato* v. *Patten,* 147 N. Y. 277, 283; *Superior Brassiere Co.* v. *Zimetbaum,* 214 App. Div. 525, 528; *Matter of Kitching,* 141 Misc. 704, 707.)

It follows that the first $300 having been validly assigned both to Peoples Loan and Investment Company and Otto Wissner, Inc., these installments were not the property of Edward J. Matthew at the time of the service of the order. For like reason, the same applies to the next two installments by reason of the Wissner assignment.

The next three payments are the property of the Morrison, Wanamaker and Montgomery Ward assignees to the extent of the sums assigned. It follows that at the date of the service of the restraining order, the only sums in the hands of the trustee which were Matthew's property were the installments falling due on December 30, 1933, and January 30, 1934, plus such amount, if any, as may remain from the amounts for September, October and November after fully paying the sums assigned to Morrison, Wanamaker and Montgomery Ward. Since the service of the order and

up to the date of the account, two additional installments have accrued which are, no doubt, also affected by the injunctive order. Of these, the last, to the extent of sixty-one dollars and fifty cents, was, on March 12, 1934, assigned to Somers & Couzen Coal Corporation.

Whereas, by reason of the injunctive order, the court will not place the trustee in an embarrassing position by directing payment of the Somers claim, there can be no question but that the February sum was validly assigned to it to the extent of the specified amount, since, so far as the record disclosed, there was no outstanding legal process binding on Matthew to prevent his making the assignment at the time it was made.

The decree herein will accordingly provide that from the first five payments which accrued, the claim of Otto Wissner, Inc., will first be paid in full with interest to the date of payment, any balance of this sum of $500 to be paid to Peoples Loan and Investment Company. From the next three payments will be paid, in order, the sums assigned to Ernest M. Morrison, John Wanamaker, New York, and Arthur L. Kraut, as attorney for Montgomery Ward & Co.

The remaining sum will be held by the trustee until the vacation of the restraining order, whereupon the assignment to Somers & Couzen Coal Company should be honored.

The payment of any further sums from the monthly payments cannot be enforced by Peoples Loan and Investment Company on the strength of their assignment, but upon the vacation of the restraining order, the trustee would be protected in making payment to it of any accrued sums then remaining in her hands or further sums as they accrue, unless further restrained by other outside process or unless the authorization to make such payments is sooner revoked by the beneficiary which he is completely at liberty to do.

No relief for Chester Neal Company is possible in this court. It is not an assignee of any right in this estate, and the mere possession of a judgment against the beneficiary, without more, can give it no right in rem against his beneficial interest. Indeed no court can give it any right against the payments under this trust except to the extent, if any, that such payments are not required for his reasonable support. (Real Prop. Law, § 98; *Bramhall* v. *Ferris*, 14 N. Y. 41, 46; *Graff* v. *Bonnett*, 31 id. 9, 11; *Matter of Williams*, 187 id. 286, 288; *Brearley School* v. *Ward*, 201 id. 358, 364.)

Proceed accordingly.