In the Matter of the Estate of FANNIE T. BURROUGHS, Deceased.

Surrogate's Court, Kings County, April 23, 1935.

*George W. I. Dwinell*, for the executors.

*Proskauer, Rose & Pankus* [*Harry Silverman* and *Wilbur H. Friedman* of counsel], for the objectants, residuary legatees.

*Charles P. & William W. Buckley* [*O. L. Shure* of counsel], for the trustees, etc., of Arthur C. Tucker, claimant.

*Weinberg & Weinberg* [*Reuben Weinberg* of counsel], for Marion DeVries, claimant.

*Franklin T. Voelker*, for Marie Thornewell, claimant.

*Edward J. Connelly*, referee.

WINGATE, S.  This is a motion to confirm the report of the referee appointed for the purpose of passing upon all questions arising upon an executorial accounting.  No objections to confirmation have been interposed except in respect to four matters and the report will accordingly be confirmed in all other respects.

The four contested issues relate, *first*, to the proposed action of the executors in paying $285 in addition to the $300 bequeathed for that purpose by item " second " of the will, for the perpetual care of the plot in which the remains of the decedent have been interred; *second*, to the allowance of $2,500 for attorneys' fees, including $700 already paid; *third*, to the propriety of the act of the executor in keeping the funds of the estate uninvested for certain periods; and, *finally*, to the proper interpretation of items " fourteenth " *et seq.* of the will.  These will be treated in order.

By the " second " item of her will testatrix bequeathed to Greenwood Cemetery the sum of $300 in trust " for the purpose of maintaining in good order, a plot of ground in said Cemetery, known as the ' Temple Plot.' "  It has been demonstrated that title to this plot stands in the name of decedent's father, James Temple.  It measures eight by twenty-one feet, and that at least eight other persons besides the testatrix are buried therein.  The cemetery authorities have stated that an immediate expenditure of $35 for resodding and regrading is needed, and that it would require a sum of $550 to provide for care for the entire plot in perpetuity.  The executors propose to supplement the legacy by the indicated sum of $285.

Obviously, since testatrix authorized the use of only $300 for the purpose, there is no authority in the testamentary document itself for this proposed additional expenditure.  The executors seek to justify it under the Surrogate's Court Act, sections 216 and 314, subdivision 3, the former granting a preference for funeral expenses,

and the latter providing that the term shall include " a reasonable charge or expenditure for the perpetual care of the decedent's burial lot."

The difficulty with this contention, however, lies in the fact that the proposed expenditure is not merely for the benefit of the decedent, but also for that of at least eight other persons. In so far as the latter is the case, it is obviously not a funeral expense of the testatrix (*Matter of Gavey*, 147 Misc. 332, 335; *Matter of Cohen*, 150 id. 534, 535; *Matter of Cohen*, 150 id. 17, 23), and does not come within the purview of the enactments cited, which do not go to the length of permitting a fiduciary to divert funds which the testatrix has dedicated to the use of living persons, to the care of the graves of other decedents.

The statute permits the expenditure of a reasonable sum for the care of the grave of each particular decedent. The present testatrix has herself fixed the sum which she believed to be here reasonable. If more is needed to care for the eight other graves, it should be paid by the estates or relatives of those decedents or by the record owner of the plot. There is no legal justification for compelling the payment by the present objectants. The objection in this regard is, accordingly, sustained.

The second objection relative to the amount to be allowed for attorneys' fees must also be sustained in view of the smallness of the estate. In an estate of this size and simplicity, not more than $1,500 can be allowed for services rendered up to the time of the accounting. In respect to the latter, remuneration is to be sought through the medium of a bill of costs. Fiduciaries and counsel should bear in mind that no more can be allowed to a number of attorneys appearing for a party than would amount to a reasonable compensation if only one were employed. If they see fit to employ more, the single reasonable compensation must be divided among them. Furthermore fiduciaries cannot expect to employ an attorney to perform usual executorial services and then saddle the expense on the estate. For these services the sole compensation is found in the executorial commissions and if the fiduciary employs some one else to do what he himself should perform, the obligation for its remuneration is his own and not that of the estate. (*Matter of Guenard*, 149 Misc. 182, 183; *Matter of Smith*, 154 id. 53, 55.) The second objection is, accordingly, also sustained.

The third objection relates to the failure of the executors to place certain current funds in a savings bank where they would draw interest instead of leaving them in a commercial account. Under ordinary circumstances the adoption of the latter course is proper by an executor. (*Matter of Kruger*, 139 Misc. 907, 909.) A review

of the facts surrounding the marshaling and administration of this estate fails to convince the court that the act of the executors in this regard was so obviously an abuse of the reasonable discretion vested in them as to warrant a surcharge. The third objection is, therefore, overruled.

The only remaining questions concern the interpretation of the will. The court cannot fully concur in the contentions of either set of adversaries in respect to the questions here raised.

The " twelfth " item directs the holding by the fiduciaries of a sum for the purpose of paying $600 a year to Mary Virginia Temple. This sum is primarily one-quarter of all of testatrix's property after the execution of the preceding directions of the will, but is subject to augmentation under item " sixteenth," *first*, by $1,000 from a later gift to Elizabeth Fessenden, and *second*, by one-half of the gifts of $1,000 each to Ethel M. Drew and Grace T. Moore, in the event that the income from the primary principal of this trust is insufficient to supply the sums necessary for the annuity given in this and the succeeding item.

The same observations apply to the like " annuity " of $480 for Anna Burroughs Wompler in the " thirteenth " item of the will.

If the " twelfth " and " thirteenth " items stood alone, it would be clear that a genuine annuity was intended, since there is a gift of a fixed annual sum in each case, and not a gift of the income from the fund which is to be set up as the source of the payments. (*Matter of Gobel*, 141 Misc. 503, 506.) The phraseology of these items indicates a clear intention on the part of the testatrix that the respective beneficiaries shall receive the sums of $600 and $480 in every event.

The question thereupon arises as to whether the provisions of item " sixteenth " respecting augmentation of the principals of the annuity funds, with their reference to the income from such funds, are to be construed as limiting the previous clear dedication of the entire principal and income of the primary annuity funds. The answer must obviously be in the negative. In the *first* place, the principle becomes applicable that a clear testamentary gift will not be circumscribed by a subsequent gift not phrased with equal clarity. (*Matter of Rossiter*, 134 Misc. 837, 840; affd., 229 App. Div. 730; affd., 254 N. Y. 583; *Matter of Schulman*, 136 Misc. 169, 170; *Matter of Mehler*, 143 id. 63, 67.) *Second*, the directions are by no means incompatible.

The composite disposition of the remainder of her estate which testatrix apparently contemplated was as follows:

*First*. One-quarter of the remainder after the execution of the directions up to and including item " eleventh," was to be held in

trust, and from this sum, principal and interest, the sum of $600 was to be paid annually in monthly installments to Mary Virginia Temple.

*Second.* An equal sum was to be held in trust for Anna Burroughs Wompler, for the payment to her of $480 annually, in like manner, from principal and interest.

*Third.* If the *income* from the funds used in the execution of the foregoing directions was insufficient to pay the sums of $600 and $480, the trustees were to hold $1,000 of the gift to Elizabeth Fessenden, and, if necessary, one-half of the gifts to Ethel M. Drew and Grace T. Moore, and apply the *income* therefrom to making up the deficiency in the sums payable under the annuities, the income from this sum being equally dedicated to both annuitants.

*Fourth.* The second half of the estate was to be used, first, to pay to Elizabeth Fessenden, Ethel M. Drew, Grace T. Moore and Herbert G. Andrews the amounts of their respective gifts, less such deductions as might be required under " third," *supra.*

*Fifth.* The balance of the second half of the estate is payable in equal shares to the seven persons named in item " fifteenth," or their statutory distributees, in the event of their predecease of the testatrix.

*Sixth.* In the event that any sums were set aside from the gifts to Elizabeth Fessenden and others, as noted in " third," *supra*, the principal thereof would be payable to them respectively on the death of the survivor of the two annuitants.

*Seventh.* Upon the successive deaths of the annuitants, the principal of the funds primarily dedicated for their benefit is payable to the seven persons noted in " fifth," *supra*, or their representatives.

*Eighth.* Testatrix obviously intended that if there were any excess of income on the funds under " first " and " second," *supra*, over that necessary to provide the annuities, that this should be accumulated. Such a provision is invalid. (*Matter of Forte*, 149 Misc. 327, 328; *Matter of Friday*, 148 id. 899; *Matter of Balsamo*, 136 id. 113, 115.) Wherefore, if there were any such excess, it would pass to the persons named in item " fifteenth," being those presumptively entitled to the next eventual estate. (*Matter of Hartfield*, 139 Misc. 214, 219; *Matter of Mehler*, 143 id. 63, 68; *Matter of Knoll*, 146 id. 613, 615; *Matter of Hopner*, 148 id. 748, 752.)

On primary principles, the annuitants are entitled to receive their payments from the date of testatrix's death. (*Matter of Lynch*, 151 Misc. 549, 552; *Matter of Wolfman*, 137 id. 325, 328; *Matter of Taft*, 143 id. 387, 391.)

Enter decree on notice.