## In the Matter of S & W EXPORTERS, INC., and Rondon Trading Corp., Bankrupts.

## Howard N. BELDOCK, as Trustee of S & W Exporters, Inc., and Rondon Trading Corp., Plaintiff,

v.

## FABERGE, INC., Defendant.

### Bankruptcy Nos. 75 B 1570, 75 B 1571.

United States Bankruptcy Court, S. D. New York.

Feb. 5, 1982.

---

Phillips, Nizer, Benjamin, Krim & Ballon, New York City, for Faberge, Inc.

Javits & Javits, New York City, for trustee.

## MEMORANDUM & ORDER

JOHN J. GALGAY, Bankruptcy Judge.

The Trustee in Bankruptcy for Rondon Trading Corp., and S & W Exporters, Inc., ("Rondon") has filed claims against Faberge, Inc. ("Faberge") under sections 60(a)(1), 67(d)(2) and 70(e)(1) of the Bankruptcy Act, ("Act") and under sections 273, 274 and 275 of the Debtor and Creditor Law of New York. The Trustee alleges that Rondon's transfers of funds and property to Faberge from September 1974 to September 1975 were fraudulent and preferential within the meaning of the Act.

This Court now has before it two pre-trial motions: Faberge's motion for summary judgment on the issue of fraudulent transfer and the Trustee's cross-motion for summary judgment on preferential transfer, both brought under Rule 56 of the Federal Rules of Civil Procedure (F.R.C.P.) and Bankruptcy Rule 756. The Trustee also requests sanctions against Faberge under F.R.C.P. 56(g) for allegedly using the pretrial motion to delay the proceedings. A hearing on the motions for summary judgment, was held before this Court on July 16, 1981.

This Court decides, after reviewing all of the evidence before it, that summary judgment cannot be awarded either on the issue of fraudulent transfer or on the issue of preferential transfer, since questions of fact remain which require a full hearing on the merits. *See FLLI Moretti Cereali v. Continental Grain Co.,* 563 F.2d 563 (2d Cir. 1977). Additionally, the Court declines to impose sanctions on Faberge, without prejudice to the Trustee's right to renew such application upon the resolution of the claims of fraudulent and preferential transfers.

### 1. *Background*

The facts before this Court demonstrate a complex series of transactions which were entered into by three independent corporations and which were governed by diverse oral and written agreements. A brief sum-

mary of the transactions and inter-relationships of the parties is important to an understanding of these issues.

The business dealings between the parties span the period from November 1973 until September 5, 1975, when Rondon filed a petition in bankruptcy. Rondon was adjudicated bankrupt on February 2, 1976. On October 14, 1975 Faberge filed a proof of claim before this Court for $1,505,800 based on promissory notes aggregating $1,405,800 and for damages in breach of contract of $900,000. In November 1973, Rondon, Faberge and, Lon United Biochemical Laboratories Ltd. ("Lon") entered into a tripartite agreement whereby Faberge would sell component parts for cosmetics (e.g. spray colognes and soaps) to Lon in Israel. Lon would manufacture finished cosmetic products from these component parts and sell them to Rondon. Rondon would distribute the cosmetics in the Far East. Some shipments of finished goods were shipped directly from Faberge to Rondon. Billing, theoretically, was done by Lon and Faberge independently for the goods each shipped to Rondon, and payment was due to Lon and Faberge separately. It is uncontested by the parties that each corporation is an unaffiliated and independent entity.

In August 1974, less than one year after making this agreement, Faberge became concerned with the size of the outstanding balance due it by both Rondon and Lon. It is alleged by Faberge that Rondon owed Lon approximately $1,386,769 (of which Lon owed Faberge a substantial sum) and owed Faberge directly approximately $438,769. Faberge subsequently undertook to collect its debt as well as Lon's debt to Faberge by securing direct payment from Rondon of both debts. These payments, made under a series of different oral and written agreements, form the subject of the motions for fraudulent and preferential transfers.

On September 31 and October 31, 1974, Rondon paid Faberge $460,000 pursuant to an oral agreement evidenced by promissory notes. Subsequently, under a written agreement of January 15, 1975, Rondon transferred $162,542 in cash and $355,044 in inventory to Faberge between January 15 and September 5, 1975. Of that cash and inventory, $160,000 was transferred within four months of filing a petition in bankruptcy.

2. *Faberge's motion for summary judgment on claim of fraudulent transfer.*

This Court first considers Faberge's motion for summary judgment on the Trustee's claim of fraudulent transfer. The Bankruptcy Act § 67(d)(2) states that without regard for actual intent, every transfer made by a debtor within one year prior to the filing of a petition in bankruptcy and without fair consideration is fraudulent

"(a) as to creditors existing at the time of such transfer ... if made by a debtor who is or will thereby be rendered insolvent ...; or (b) as to then existing creditors and as to other persons who become creditors during the continuance of a business or transaction ... if made by a debtor who is engaged or is about to engage in such business or transaction, for which the property remaining in his hands is an unreasonably small capital ...; or (c) to then existing and future creditors if made by a debtor who intends to incur debts beyond his ability to pay as they mature."

In the alternative, Act section 67(d)(2)(d) requires "*actual intent* ... to hinder, delay, or defraud ... creditors" (emphasis added) and excludes proof of fair consideration and insolvency.

The record indicates that Rondon's transfers of money and assets to Faberge occurred within one year of the filing of a petition in Bankruptcy and that there were then existing and future creditors who were thereby disadvantaged. Faberge, a large unsecured creditor, gained a decided advantage over other unsecured creditors by Rondon's pre-petition payments of approximately $982,586. Faberge has additionally admitted, for the purpose of their summary judgment motion,[1] that it knew of Rondon's insolvency at the time of the transfers.

1. Once the movant's summary judgment motion is denied, this admission is lost. Wright

■ To prevail on summary judgment against the Trustee's claim of fraudulent transfer based on Act section 67(d)(2)(a), (b), and (c), Faberge must demonstrate beyond any factual controversy that fair consideration was given. To prevail on summary judgment on the trustee's claim based on Act section 67(d)(2)(d), Faberge must demonstrate beyond any factual controversy an absence of actual intent to defraud creditors. Based on the discussion following, this Court finds that Faberge has failed to demonstrate beyond factual controversy either presence of fair consideration or absence of actual intent.

### a. Fair consideration

Initially, this Court examines issues of fact concerning fair consideration which is defined by the Act section 67(d)(1)(e)(1) as "when, in good faith . . . and a fair equivalent therefore . . . and antecedent debt is satisfied . . ." Two components are considered: fair equivalent value and good faith. *Misty Management Corp. v. Lockwood*, 539 F.2d 1205 (9th Cir. 1976). Faberge's application of the Rondon payments of September 31 and October 31, 1974, raise substantial questions as to whether Rondon received fair consideration. In August of 1974, as a result of negotiations with Rondon, Faberge received promissory notes totalling $1,150,000 from Rondon. A Faberge memorandum dated November 7, 1974 (Exhibit P) states that Faberge was acting "as the collecting agent and bookkeeping service for Lon" and violated the prior agreement between the parties whereby Rondon was to pay Lon, and Lon to pay Faberge. Rondon transferred $210,000 in September 1974 and $259,000 in October 1974 to Faberge and subsequently defaulted on its remaining notes. These payments were initially applied to Faberge's debt (Exhibits I, K) owed by Rondon. As such, they satisfied Rondon's debt to Faberge in full with excess to be applied to Rondon's debt to Lon (Exhibit K). Faberge subsequently reapplied these Rondon payments in late December 1974 and January 1975, to satisfy Lon's debt to Faberge. In so doing, it is only logical to deduce that Faberge revived Rondon's debt to it and extended to Lon any credit given Rondon as a result of payment.

■ Fair equivalent value can be given in payment of an antecedent debt. *Strongin v. International Acceptance Bank, Inc.*, 70 F.2d 248 (2d Cir.), *cert. denied*, 293 U.S. 575, 55 S.Ct. 86, 79 L.Ed. 673 (1934). It is an accepted principle of contract law that a debtor has the right to direct the application of payment by the creditor at the time of or prior to payment and in failing to do so, the creditor has the right to apply payment as he sees fit. *Laney v. Whitaker*, 91 Misc.2d 949, 398 N.Y.S.2d 839 (1977); 43 N.Y.Jur. *Payment* § 58 (1965). However, once application of payment has been made and the debtor notified, the debt is discharged. Rondon claims it received notice and Faberge's internal memoranda ordered such notice be given. Chief Justice Marshall in discussing a creditor's election to apply payment to one of two separate accounts, wrote "no principle is recollected which obliges the creditor to make this election immediately. After having made it, he is bound by it." *Alexandria v. Patten*, 4 Cranch 317,320, 2 L.Ed. 633 (1808). Only the assent of the parties can justify reapplication. *Louis v. Bauer*, 33 A.D. 287, 53 N.Y.S. 985 (1898); *Allen v. Culver*, 3 Denio 284 (N.Y.Sup.Ct.1846); 15 Williston on Contracts *Discharge* §§ 1798, 1800 (1972); *See Wolf v. Aero Factors Corp.*, 126 F.Supp. 872 (S.D.N.Y.), *aff'd*, 221 F.2d 291 (2d Cir. 1954).

■ This Court has not found any evidence of the ratification of reapplication by the parties. The subsequent written agreement of January 15, 1975, between the parties dealt only with Lon and Faberge's consolidated debt while specifically reserving Rondon's right to dispute the claimed amount. Also Lon's subsequent assignment to Faberge of Lon's claim against Rondon did not justify the reapplication of payment as asserted in Faberge's Reply Memoran-

and Miller, 10 *Federal Rules of Civil Procedure* § 2720 (West 1973).

dum of June 24, 1981. Only Rondon's assent could accomplish this. *Allen v. Culver*, 3 Denio 284 (N.Y.Sup.Ct.1846). An assignment does not provide debtor ratification or operate retroactively but rather "operates from the time of its making to divest the interest of the assignor irrespective of notice to the debtor." *Re Kitchings Will*, 141 Misc. 704, 253 N.Y.S. 112 (1931).

If, in fact, Rondon's payments following the January 1975 agreement were applied to a Faberge debt unlawfully revived, a question of fair consideration also arises as to these payments. "For a debt to exist something must be owed to the creditor." *Klein v. Tabatchnick*, 610 F.2d 1043, 5 BCD 1159, 27 CBC 911 (2nd Cir.) *aff'd in part, rev'd, in part, on other grounds*, 418 F.Supp. 1368 (S.D.N.Y.1976). The record shows that Lon and Faberge by an agreement of December 27, 1974, which excluded Rondon, worked out a formula for application of Rondon's payments to Lon's and Rondon's debt to Faberge. Thereafter, Faberge's financial records and internal memoranda show a reapplication of Rondon's payments on the promissory notes. Rondon, was not a party to the agreement and did not assent to the reapplication of the payments. Thus, if Faberge unlawfully reapplied Rondon's payments, Rondon may not have received fair equivalent value and, consequently, no fair consideration may have been present.

We turn now to the question of good faith as a component of fair consideration. A transfer is "fraudulent within the meaning of the Bankruptcy Act if it lacks good faith even though fair equivalent value may have been present." *Bullard v. Aluminum Company of America*, 468 F.2d 11 (7th Cir. 1972). A determination as to whether the "transaction carries the earmarks of an arms-length bargain" marks the measure of good faith. *Holahan v. Henderson*, D.C., 277 F.Supp. 890, *aff'd*, 394 F.2d 177 (5th Cir. 1969); *Bullard v. Aluminum Company of America*, 468 F.2d 11 (7th Cir. 1972). Such a determination can only be made after full consideration of the circumstances in which the parties negotiated in 1974 and 1975.

A court in this district construed a recent decision of our circuit as indicating that "if the transferee had knowledge of the unfavorable financial condition at the time of the transfer, it could not meet the good faith requirement" under the Act. *Seligson v. New York Produce Exchange*, 394 F.Supp. 125, 133 (S.D.N.Y.1975), *construing, Cohen v. Sutherland*, 257 F.2d 737, 742 (2d Cir. 1958). It would follow that Faberge's admission of knowledge of Rondon's insolvency would indicate lack of good faith and thus defeat Faberge's own motion. The evidentiary material also indicates circumstances from which knowledge of insolvency might be inferred.

This Court declines to grant summary judgment to Faberge on claims against it under Act section 67(d)(2)(a), (b), and (c). Both fair consideration and the existence of insolvency or unreasonably small capital for the transaction of business are questions of fact to be decided at a hearing on the merits. *Klein v. Tabatchnick*, 418 F.Supp. 1368, (S.D.N.Y.1976), *aff'd in part, and rev'd in part, on other grounds*, 610 F.2d 1043, 5 BCD 1159, 27 CBC 911 (2d Cir. 1979); *Seligson v. New York Produce Exchange*, 394 F.Supp. 125 (S.D.N.Y.1975).

b. *Actual Intent*

Having considered the factual questions under Act section 67(d)(2)(a), (b) and (c), the Court briefly considers whether Faberge has demonstrated, beyond controversy, the absence of actual intent to "hinder, delay, or defraud creditors" and thus moot the Trustee's claim under Act section 67(d)(2)(d). Neither fair consideration nor knowledge of insolvency are required under Act section 67(d)(2)(d). 4 *Collier on Bankruptcy* ¶ 67.34 (14th ed. 1978). The theory on which the trustee anchors his claim against Faberge under Act section 67(d)(2)(d) is based on the dominion and control of one entity over another to effect a transfer of property or money and without reference to any fraudulent intent on the part of the debtor. 4 *Collier on Bankruptcy* ¶ 67.37 (14th ed. 1975); *see Langan*

*v. First Trust & Deposit Co.*, 293 N.Y. 604, 59 N.E.2d 424 (1944). "Existence of actual fraudulent intent is a question of fact." *Misty Management Corp. v. Lockwood*, 539 F.2d 1205, 1206 (9th Cir. 1976). The burden of demonstrating fraudulent intent is made more difficult in the instant situation in part because the corporations involved were independently formed and managed and thus far the facts fail to indicate the "badges of fraud", i.e., control of Lon by Faberge. Actual intent and not mere suspicion of an intention to engage in fraudulent transfer must be shown. *Bugeja v. Davis*, 34 Misc.2d 276 278, 228 N.Y.S.2d 216 (N.Y. Sup.Ct.1962). We hold that the Trustee has the right to present evidence before this court at a full hearing on the merits of his contention that Rondon's transfers of property and money to Faberge were extracted by a level of force and duress amounting to an intent to defraud. We endorse the principle that "allegations of fraud do not readily lend themselves to resolution by way of summary judgment." *Teledyne Indus., Inc. v. Eon Corp.*, 373 F.Supp. 191 (S.D.N.Y. 1974).

### 3. *Trustee's motion for summary judgment on claim of preferential transfer.*

This Court focuses next on the Trustee's cross motion for summary judgment on the issue of preferential transfer. Act section 60(a)(1) defines a preference as a transfer within four months of the filing of a petition in bankruptcy

of any property of a debtor to or for the benefit of a creditor for or on account of an antecedent debt, made or suffered by such debtor while insolvent.

The transfer must enable the creditor "to obtain a greater percentage of debt than some other creditors of the same class." Bankruptcy Act § 60(a)(1). If the creditor receiving or benefitted by such transfer had "reasonable cause to believe the debtor is insolvent", the trustee can void the transfer. Bankruptcy Act § 60(b).

The parties agree that Rondon transferred $160,000 in money and inventory to Faberge in the four months preceding the filing of a petition in bankruptcy. Rondon's adjudication in bankruptcy on February 2, 1976, and the plight of its unsecured creditors demonstrate that Faberge, an unsecured creditor, obtained a greater percentage of payment as a result of the transfers by Rondon during the four months prior to September 5, 1975.

Insolvency and reasonable cause to believe the debtor insolvent remain to be demonstrated beyond controversy. They are questions of fact. *Constructora Maza Inc., v. Banco de Ponce*, 616 F.2d 573 (1st Cir. 1980). The Trustee has submitted considerable documentation to this Court both on the issue of insolvency and Faberge's reasonable cause to believe the debtor insolvent.

### a. *Insolvency*

Insolvency under the Act occurs whenever the aggregate of the debtor's property will "not at a fair valuation be sufficient in amount to pay his debts." Bankruptcy Act § 1(19). "The determination of fair valuation of the debtor's assets at a specific time is at best an inexact science." *Constructora Maza Inc., v. Banco de Ponce*, 616 F.2d 573 (1st Cir. 1980). In the instant case, moreover, Faberge contests the accounting methods used by the Trustee in determining insolvency. The Trustee responds that "retrojection" [2] is an acceptable accounting method for determining insolvency. Also in dispute, are the dates of the existence of insolvency. Summary judgment is inappropriate when the evidence offered is technical and requires the testimony of expert witnesses. With these factual issues in dispute, the granting

---

**2.** The Court in *Haynes & Hubbard, Inc., v. Stewart*, 387 F.2d 906, 907 n.1 (5th Cir. 1967) described the retrojection method in accounting, stating:

A bankrupt's insolvency on a transfer date may be shown by using company books and a later inventory and by working backwards through a ledger to reflect sales, purchases and returns after the critical date.... a trustee must be able to show absence of substantial or radical changes in assets or liabilities of the bankrupt between [retrojection dates].

of a motion for summary judgment is improper.

#### b. *Reasonable Cause to believe the debtor is insolvent*

■ The Trustee submits convincing evidence of Faberge's reasonable cause to believe that Rondon was insolvent in the four months prior to September 5, 1975. Supporting his assertion of "reasonable cause" the Trustee has submitted: (1) memoranda from banks responding to Faberge's credit checks, with the specific references to Rondon's financial plight; (2) the deposition of Rondon's attorney indicating that he had told Faberge officials of the possibility of Rondon's bankruptcy; and (3) evidence of Rondon's inability to bear the cost of an audited financial statement to satisfy the agreement with Faberge of January 15, 1975. The list of facts indicating Rondon's serious financial problems and within Faberge's knowledge is substantial. To determine if "reasonable cause" exists the courts apply an objective test based on the circumstances of each case. *Grant v. National Bank*, 97 U.S. 80, 24 L.Ed. 971 (1887); *Security-First National Bank of Los Angeles v. Quittner*, 176 F.2d 997 (9th Cir. 1949); *Prudential Ins. Co. of America v. Nelson*, 96 F.2d 487 (6th Cir. 1938).

The Court, in *Kravetz v. Joange Building Corp.*, 341 F.2d 561, 564 (2d Cir. 1965), stated that

> Knowledge of insolvency is not necessary, nor even actual belief thereof; all that is required is reasonable cause to believe that the debtor was insolvent at the time of the preferential transfer.

The Trustee for Rondon presents evidence which both in quantity and substance invites this Court to find that Faberge had more than a "mere suspicion"[3] of Rondon's insolvency. However, summary judgment mandates that all "materials be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). Faberge alleges that

Rondon's balance sheet of March 1975 and Rondon's continued payments gave Faberge reasonable cause to believe that Rondon was not insolvent. This allegation provides factual questions for later determination by this Court as to the insolvency issue.

#### 4. *Sanctions*

■ Finally, this Court considers the Trustee's motion under F.R.C.P. 56(g) for sanctions against Faberge. A movant has the right to seek summary judgment even though the motion seems unlikely to be granted. *Ford v. Luria Steel & Trading Corp.*, 192 F.2d 880, 882 (8th Cir. 1951). We decline to grant sanctions against Faberge given the uses which the summary judgment motion has served and Faberge's right to so move. This denial is without prejudice to the trustee's right to renew the application upon the resolution of the claims of fraudulent and preferential transfers.

It is therefore ordered that the motions for summary judgment on the issues of preferential and fraudulent transfers be denied. This Court declines to sanction Faberge for moving for summary judgment, without prejudice to the trustee's right to renew this application. Parties are ordered to submit proposed pre-trial orders setting forth facts which are not disputed and framing the issues for a hearing on the merits. *See Cities Service Co. v. United States*, 362 F.Supp. 830 (S.D.N.Y.1973). A pre-trial conference will be scheduled shortly thereafter.

It is so ordered.

---

**3.** A mere suspicion of insolvency is distinguished from reasonable cause to believe the debtor insolvent. *Grant v. National Bank*, 97 U.S. 80, 24 L.Ed. 971 (1887).