Joe **SUTCLIFFE, d/b/a Sutcliffe Pipe and Supply, Plaintiff,**

v.

**JOEY DRILLING AND EXPLORATION, INC., et al., Defendants.**

No. KC–1887.

United States District Court
D. Kansas.
Feb. 10, 1966.

---

———◆———

Robert Pennington, Chanute, Kan., for plaintiff.

Frank Thompson, Iola, Kan., for defendant.

Thomas E. Joyce, Asst. U. S. Atty., Kansas City, Kan., for the United States.

## MEMORANDUM OF DECISION

ARTHUR J. STANLEY, Jr., Chief Judge.

The subject of this proceeding is an oil and gas lease in Neosho County, Kansas, known as the Moore lease, which was dated March 31, 1961, and in which defendant Joey Drilling and Exploration, Inc., was the original lessee. Plaintiff, a mechanic's lien holder, brought this action to enforce and foreclose his mechanic's lien. Defendant United States of America set up several general tax liens in its answer, and asked that they be foreclosed against the interest of Joey Drilling and Exploration, Inc. in the Moore lease. Judgment was rendered in favor of plaintiff upon his mechanic's lien, and judgment was rendered in favor of defendant United States upon its tax liens. The Moore lease was ordered sold by a special master, the proceeds to be applied to the judgment liens.

The Moore lease was sold on June 11, 1964. After payment of the costs, there remains in the hands of the clerk of this court the sum of $7,511.61 for distribution. This matter is now before the court on plaintiff's motion to disburse the sum to plaintiff to apply to his judgment lien. Also before the court is a motion by Marvin E. Boyer, d/b/a Marvin E. Boyer Oil Company, for discharge from an order to show cause. It is sufficient to note that determination of this motion is governed by the ruling on the motion for disbursement. If the plaintiff is to prevail, Mr. Boyer's motion should also be granted. See brief of United States, p. 1.

The sequence of events was as follows:

Prior to the execution of the Moore lease, on February 28, 1961, the United States filed in Neosho County, Kansas a notice of federal tax lien in the sum of $5,768.04 (this lien will here be referred to as "Lien A"). Then on August 21, 1961, the United States filed in Neosho County, Kansas a notice of federal tax lien for $2,305.60 (herein referred to as "Lien B").

On March 31, 1961, the Moore lease was given to Joey Drilling and Exploration, Inc. On September 11, 1961, Joey divested itself of an undivided 1/16th of the 7/8ths working interest in the Moore lease to William Haralson, and 1/16th to Frank Coston, both assignments being recorded on October 2, 1961. Also on October 2, 1961, the United States filed another notice of federal tax lien in the amount of $2,803.06 (herein referred to as "Lien C") in Neosho County. After October 2, 1961, Joey Drilling and Exploration, Inc. divested itself of all its

remaining interest in the Moore lease. Thereafter, the government filed Liens D, E, and F in Neosho County.

Thus, the United States of America's Liens A, B, and C are first and prior liens upon the entire working interest in and to said lease, and Liens D, E, and F do not affect the working interest in the Moore lease.

The government's liens were also filed in the same order and at approximately the same times in Allen County, Kansas. In cases numbered 22852, 22838, 22841, 22850, and 23176 in the District Court of Allen County, Kansas, the liens were foreclosed and a recovery to the United States was obtained in the total sum of $9,570.08. In cases numbered KC–1858, KC–1859, KC–1884, KC–1885, and KC–1886 in the United States District Court for the District of Kansas (with which the instant case was consolidated), a recovery was obtained upon the liens of the United States foreclosed therein in the total sum of $5,762.45. The total recovery by the United States, then, has been $15,332.53.

The Internal Revenue Service did not apply any of the money recovered to Liens A, B, or C; but has applied all moneys to the partial satisfaction of Lien F.

The only question presented here is whether this allocation by the United States was proper. The plaintiff contends that the United States is bound by the doctrine of "first in time, first in right," and must therefore apply the first money received to the satisfaction of Liens A, B, and C, and not to Lien F. If this were done, there is no dispute but that the government's claims in priority to the plaintiff's would be satisfied. The United States, however, contends that absent a direction from the court at the time of judgment, the money should have been applied as it was—going to partial satisfaction of the most junior security interest. Thus, Liens A, B, and C would still be totally unsatisfied.

The question is, does the Internal Revenue Service have the right to apply the funds to the junior lien, or must the funds be applied to the liens in the order in which they were filed. This identical question was considered in Commercial Credit Corp. v. Schwartz, 130 F.Supp. 524 (E.D.Ark.1955). In that case a somewhat similar factual situation was presented; however, there the government had not obtained a judgment, but had proceeded by the summary remedy of distraint and sale. In holding 'that the funds recovered must be applied to the government's first lien, the court stated:

"We would consider it strange indeed if the Congress intended for the Courts to be bound by the principle, 'the first in time is the first in right,' but intended for the collection officials of the Government to be left free to disregard that principle. We do not attribute any such intent to Congress, and hold that the principle just mentioned is as binding upon the collection officials as it is upon the courts." (p. 530.)

The result reached is consonant with reason. If the liens were not all the government's, it would be clear that money recovered in the judgments would go first to the first in time, second to the second, etc. I see no reason to suppose a different result is required here.

This result also seems consistent with the Tenth Circuit's treatment of this area. In O'Dell v. United States, 326 F. 2d 451 (10th Cir. 1964), the problem of government tax liens, and their allocation, was considered in another connection. In the course of the opinion, the court stated that payments made following an execution or judicial sale are not voluntary, but involuntary. Cited as support for the proposition that the debtor may not direct application under such circumstances are 70 C.J.S. Payment § 51, pp. 256–257; 40 Am.Jur., Payment, § 139, pp. 811–812. It is clear that neither the debtor nor the creditor may direct the allocation of funds so realized. The direction of allocation generally is up to the court, and the courts have followed various rules. Some follow the first in time, first in right doctrine; others provide for pro rata payments among the various

creditors. In short, the allocation is within the court's discretion. For the reasons given, I believe the most just result under these circumstances is for the first in time, first in right doctrine to prevail.

Since no specific application was directed by the earlier courts, I conclude that the money should have been first applied to the government Liens A, B, and C; and in determining priorities in the instant case, as a court of equity, I consider that as having been done. See Commercial Credit Corp. v. Schwartz, supra.

Ruling, as I do, that Liens A, B, and C are satisfied, the plaintiff's motion for disbursement will be granted, and Boyer's motion for discharge will be granted.

Counsel will prepare, circulate, and submit an appropriate order.