UNITED STATES of America,
Plaintiff-Appellee,

v.

Max POLLACK, formerly d/b/a Max Pollack Co., et al., Defendants,

and

Shirley Mestel and Ida Mestel, d/b/a King Holding Company, Defendants-Appellants.

No. 97, Docket 30516.

United States Court of Appeals
Second Circuit.

Argued Nov. 10, 1966.

Decided Dec. 2, 1966.

Mark S. Rothman, Atty., Dept. of Justice, Washington, D. C. (Mitchell Rogovin, Asst. Atty. Gen., Lee A. Jackson, Joseph Kovner, Attys., Dept. of Justice,

Washington, D. C., Joseph P. Hoey, U. S. Atty. for the Eastern Dist. of New York, and Cyril Hyman, Asst. U. S. Atty., Brooklyn, N. Y., on the brief), for plaintiff-appellee.

Michael Permut, New York City (Morris Permut, New York City, on the brief), for defendants-appellants.

Before LUMBARD, Chief Judge, and MEDINA and KAUFMAN, Circuit Judges.

MEDINA, Circuit Judge:

This case involves two parcels of real estate in Queens County, New York, known as the Rego Park and the Middle Village properties, formerly owned by one Max Pollack. There was an underlying first mortgage on the Rego Park property and a series of government liens were filed against Pollack. The first of these liens in time was filed on May 12, 1958, in the principal sum of $6719.29. At that time Pollack owned both properties. The Mestels, who are appellants here, bought the Middle Village property on August 7, 1958, apparently without searching for and ascertaining the existence of the lien. Thereafter, additional government liens were filed against Pollack aggregating $23,524.14, all of which were effective against the Rego Park property only. There are junior lienors and creditors of Pollack who may be disregarded, for the purposes of this case.

The holder of the first mortgage on the Rego Park property foreclosed and on May 7, 1964, this parcel was sold. The simple question that lies at the heart of the case is whether the Mestels are entitled to have $20,123.12, the proceeds of the foreclosure and sale of the Rego Park property, applied in such fashion by the government as to extinguish the May 12, 1958 lien, thus leaving the Middle Village property unencumbered, and the balance of the $20,123.12, after the disposition of the May 12, 1958 lien, insufficient to liquidate the balance of the debt, that amounted in all to $30,243.43. The government claims it had a legal and equitable right to apply the entire $20,123.12 to the payment of the liens on the Rego Park property, thus preserving its lien against the Middle Village property as security for the balance of the indebtedness.

Procedurally, we have before us the records of two cases. First, the foreclosure action in the Supreme Court of Queens County, and, second, the government's action in the District Court for the Eastern District of New York to reduce its claims to judgment and to foreclose its liens. In the federal action the Mestels defaulted and summary judgment was granted. The Mestels moved to open their default and for leave to interpose an answer asserting their claim or defense to the effect that the application of equitable principles and the "first in time, first in right" rule, required the $20,123.12, the proceeds of the foreclosure sale, to be first applied to the payment of the amounts secured by the liens on the Middle Village property. It is from the final order denying this motion that the Mestels appeal to us.

What gives the appeal a semblance of complexity is the intermingling of a spate of arguments relating to matters that are quite distinct in law.

I.

While the government liens on both the Rego Park and the Middle Village properties represent security for separate items of indebtedness, there is no meaningful priority among them because these liens all belong to the same creditor and there are no intervening, competing liens. While it is often said that a creditor lacks the freedom to allocate involuntary payments made by a debtor that he has on receipt of a voluntary, unallocated payment, it is the right of the creditor to apply sums received from the debtor or for his account in such fashion as to give the creditor the utmost advantage of such security as the creditor may possess. And in the absence of any other creditor who would be prejudiced by such an allocation, the courts must respect this right of a secured creditor. In this case, there are no intervening or competing liens and, ac-

cordingly, the $20,123.12 already paid to the government out of the proceeds of the sale of the Rego Park property may be allocated in such a way as to preserve the secured position of the government. On the other hand, if the moneys received were applied in the manner for which the Mestels contend, the result would be a partial liquidation of the debt and a wholly unnecessary elimination of part of the government's security. There is no reason in equity or common sense why the lienor should sacrifice any part of its security. Indeed, the Mestels have no equity whatever.

■ But, appellants say, the "first in time, first in right" rule requires a different result, citing Commercial Credit Corp. v. Schwartz, 130 F.Supp. 524 (E.D. Ark., 1955). Perhaps misled by the generality of some of the language used in the introductory part of the opinion relating to the "first in time is the first in right" discussion in Commercial Credit, appellants have failed to take into account the fact that Commercial Credit Corp.'s chattel mortgage was sandwiched in between government lien No. 1, which was senior to it, and government liens Nos. 2 and 3 which were junior to the chattel mortgage. In other words, in the context of a series of government liens, the teaching of *Commercial Credit* is that an application of the "first in time is the first in right" rule prevents the government from using the security of a prior lien to satisfy subsequent liens to the detriment of an intervening or competing creditor whose security is superior to that of the government with respect to its junior liens. The *Commercial Credit* case has no application here because, as to the Rego Park property, there is no intervening lienor and thus, as we have stated, no creditor who could be prejudiced by the government's application of the proceeds from the sale of the Rego Park property as it seeks to do here.

Unfortunately, the District Court in Kansas apparently made the same mistake as appellants would have us make in this case, as Sutcliffe v. Joey Drilling and Exploration, Inc. (D.C.Kan., 1966) 261

F.Supp. 417 also relied on by appellants, requires the government to satisfy its liens in the order of their seniority in the absence of any intervening or competing lien. We think this case was wrongly decided.

## II.

■ Appellants advance a number of ingenious arguments based upon the terms of the judgment in the Queens County foreclosure action and the so-called "priority adjustment fund" set up in foreclosure cases in compliance with the Supreme Court ruling in United States v. Buffalo Savings Bank, 371 U.S. 228, 83 S.Ct. 314, 9 L.Ed.2d 283 (1963). The Mestels were not parties to the foreclosure action. The decree provided:

That out of the net proceeds of the sale there remaining, the referee shall set aside the sum found to be due upon the plaintiff's mortgage with interest thereon as aforesaid, less such sums included therein for advances by the plaintiff in satisfaction of real estate taxes, assessments, water rates, similar charges, and insurance premiums which became specific, perfected and definite in amount subsequent to the date the federal lien became a charge upon the subject property and also a sum sufficient to pay other outstanding liens, if any, which are superior to the liens of the United States with interest, in a separate bank account in his name, to be designated the "Priority Adjustment Fund". In the event of any uncertainty or dispute as to the amounts or priorities of said liens, the referee shall apply to the Court for directions, upon notice to all interested parties.

We think these provisions of the decree have reference only to the various liens of those who were parties to the foreclosure action. They have no bearing on the defense sought to be interposed in this action by appellants upon the opening of their default as requested. In fact the first mortgage was the only lien superior to the government liens above discussed, all the other parties to the foreclosure ac-

tion appear to have been junior lienors or general creditors, and the $20,123.12, the proceeds of the sale after the satisfaction of the first mortgage was paid over to the government. As Judge Dooling commented in his opinion below:

Nothing in the Rego Park distribution did an injustice to the Mestels. There is here only the unavoidable consequence of the *Buffalo Savings Bank* rule, the shifting of the real estate tax to the shoulders of the Rego Park Mortgagee.

Affirmed.