**In re Benjamin F. CUSTER, Debtor.**

**Bankruptcy No. 5–86–00770.**

United States Bankruptcy Court,
D. Connecticut.

July 14, 1988.

Christopher M. Royston, Coan, Lewendon & Royston, New Haven, Conn., for Trustee.

Thomas J. Welsh, Brown & Welsh, Meriden, Conn., for American Nat. Bank.

**MEMORANDUM OF DECISION AND ORDER ON OBJECTION TO TRUSTEE'S PROPOSED DISTRIBUTION OF SALE PROCEEDS**

ALAN H.W. SHIFF, Bankruptcy Judge.

At issue is whether a creditor with two mortgages may compel the allocation of sale proceeds to maximize payment of its claims at the expense of a lienholder with an intervening security interest. The following relevant facts are undisputed.[1]

I

On November 13, 1986, the debtor filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code. On July 21, 1987, an order entered, granting the trustee's motion (contested motion No. 5–87–0132) to sell the estate's one half undivided interest in certain real property, free and clear of all interests. *See* 11 U.S.C.

---

**1.** All figures representing dollar amounts in this decision are rounded and do not reflect any

§ 363(b) and (f).[2] The debtor's wife ("wife") was a co-owner of the property. On July 28, 1987, judgment entered in adversary proceeding No. 5–87–0100, approving a stipulation between the trustee and the wife which authorized the trustee to sell the property free and clear of the wife's interest. *See* § 363(h). On August 26, 1987, the trustee sold the property at private sale for $503,786.00[3] of which $375,631.00 ("the fund") is available for distribution.[4]

The following creditors, named as respondents in contested motion No. 5–87–0132, hold unsatisfied liens which have attached to the sale proceeds:[5]

American National Bank ("ANB") held a mortgage, dated July 10, 1984, and now has a $258,812.00 lien on the fund;

Mediplex of Connecticut, Inc. ("Mediplex") had a $5,000.00 attachment, recorded on July 9, 1986, on the debtor's interest in theproperty and now has a lien in that amount on the estate's share of the fund; and

ANB also held a mortgage, dated August 19, 1986, and now has a lien in the amount of $170,540.00 on the fund.[6]

adjustment for any interest or charge.

2. The trustee's motion listed the following respondents:
   a. Town of Cheshire—tax claim on grand lists of October 1, 1985 and October 1, 1986;
   b. First Federal Bank of Connecticut—mortgage—July 10, 1984;
   c. American National Bank—mortgage—July 10, 1984;
   d. Mediplex of Connecticut—attachment on debtor's interest only—July 9, 1986;
   e. William W. Anthony—attachment on the debtor's interest only—August 15, 1986;
   f. American National Bank—mortgage—August 20, 1986; and
   g. First Federal Bank of Conn.—lis pendens —January 13, 1987.

3. This figure represents the gross sale price of $511,500.00 less $7,714.00 for closing adjustments.

4. On October 13, 1987, the court authorized the trustee to pay a real estate broker commission in the amount of $20,460.00, an appraiser's fee in the amount of $250.00, and to disburse the sum of $107,380.00 to the First Federal Bank of Connecticut, holder of the first mortgage on the property. On February 19, 1988, the court authorized the trustee to distribute an additional

In addition, the debtor claims an exemption under § 522(d)(1) in the amount of $4,750.00.

## II

The trustee proposes a distribution from the estate's and the wife's share of the fund in accordance with a stipulation[7] with the wife as follows:

ANB's lien (relating to its July 10, 1984 mortgage) in the amount of $258,812.00 is to be satisfied by allocating one-half of the payment from each share;

Mediplex's lien in the amount of $5,000.00 is to be satisfied from the estate's share;

ANB's lien (relating to its August 19, 1986 mortgage) in the amount of $170,540.00 is to be partially satisfied from $58,410.00 remaining in the wife's share;

The debtor's $4,750.00 exemption is to be paid from the estate's share; and

The remaining $48,660.00 in the estate's share is to be available for distribution to general unsecured creditors less any allowed priority claims.

$65.00 to First Federal as payment for its § 506(b) attorney's fees.

5. All other creditors/respondents who held valid liens were paid in full as follows: Taxes owed to the Town of Cheshire for 1985 and 1986 were paid at the closing, *See note 3, supra;* The First Federal Bank of Connecticut mortgage was paid in full on October 13, 1987, *See note 4 supra.* And, William W. Anthony's June 1, 1987 proof of claim stated that the attachment he obtained on August 15, 1986 "has subsequently been avoided."

6. This mortgage was granted to ANB during the preference period. The parties have stipulated that this mortgage is only enforceable against the wife's share of the fund. Post-trial Stipulation dated March 3, 1988, p. 2.

7. Code § 363(j) provides that after the sale of co-owned property, the "trustee shall distribute to the ... co-owners ... and to the estate, the proceeds of such sale ... according to the interests of such ... co-owners ... and of the estate." 11 U.S.C. § 363 (1982). The debtor's wife and the trustee agreed, however, that the trustee would retain her portion of the proceeds of the sale and distribute them under "non-bankruptcy principles of law and equity." Post-trial Stipulation dated March 3, 1988, p. 3.

ANB objects to that distribution, contending that since the debtor and his wife were jointly and severally liable on its July 10, 1984 mortgage, it may look to either the estate's or the wife's share of the fund to satisfy the lien which replaced that mortgage. Thus, ANB proposes that the estate's entire $1 7,816.00 share of the fund be applied in partial satisfaction of its July 10, 1984 mortgage and that the wife's share be applied to the balance of that mortgage and in partial satisfaction of its August 19, 1986 mortgage. Under that distribution scheme, ANB's July 10, 1984 mortgage would be paid in full; $116,-820.00 of its August 19, 1986 mortgage would be paid (in contrast to the trustee's $58,410.00 proposal); and Mediplex, the debtor, and the unsecured creditors would receive no distribution.[8] ANB's position is untenable.

## III

■ Even when a secured creditor has a right to allocate a payment among various obligations, its allocation may not impair the rights of intervening secured creditors. *Cf., United States v. Pollack,* 370 F.2d 79, 80 (2d Cir.1966). Here ANB has no such right.

■ The law regarding the allocation of payments is well settled. A debtor making a voluntary payment has the absolute right to have that payment allocated among various obligations in accordance with his or her instructions. *Federal Land Bank of St. Louis v. Wilson,* 719 F.2d 1367, 1371 (8th Cir.1983); *First National Bank in Palm Beach v. United States,* 591 F.2d 1143, 1147 (5th Cir.1979); *Prudence Realization Corp. v. Jackson,* 212 F.2d 362, 368 (2d Cir.1954); *National Bank of the Commonwealth v. Mechanics' National Bank,* 94 U.S. 437, 439 (1876); *Matter of S & W Express, Inc.,* 16 B.R. 941, 945 (Bankr.S.D.N.Y.1982); *see also, American Woolen Co. v. Maaget,* 86 Conn. 234, 243–44 (1912); *Sherwood v. Haight,* 26 Conn. 432, 434 (1857); 16 Am.Jur.2d *Payment,* § 83

**8.** The following chart illustrates the difference between the two proposed methods of distribution.

TOTAL FUNDS = $375,631.00

| | Estate's Portion $187,816.00 | Wife's Portion $187,816.00 |
|---|---|---|
| A. Trustee's Proposed Distribution | | |
| ANB Mortgage July 10, 1984 | 129,406.00 | 129,406.00 |
| Mediplex attachment | 5,000.00 | ----- |
| ANB Mortgage August 19, 1986 | ----- | 58,410.00 |
| Debtor's exemption | 4,750.00 | ----- |
| Available for distribution to unsecured creditors | 48,660.00 | ----- |
| | 187,816.00 | 187,816.00 |
| B. ANB's Proposed Distribution | | |
| ANB Mortgage July 10, 1984 | 187,816.00 | 70,996.00 |
| Mediplex attachment | ----- | ----- |
| ANB Mortgage August 19, 1986 | ----- | 116,820.00 |
| Debtor exemption | ----- | ----- |
| Available for distribution to unsecured creditors | ----- | ----- |
| | 187,816.00 | 187,816.00 |

(1988). If the debtor does not direct the allocation of that payment, the creditor will have that right and may make the allocation to its advantage. *Federal Bank of St. Louis, supra,* 719 F.2d at 1371; *First National Bank in Palm Beach, supra,* 591 F.2d at 1147; *Luksus v. United Pacific Insurance Co.,* 452 F.2d 207, 209 (7th Cir. 1971); *United States v. Pollack, supra,* 370 F.2d at 80; *Federal Deposit Insurance Corp. v. Freudenfeld,* 492 F.Supp. 763, 770 (E.D.Wis.1980); *National Bank of the Commonwealth, supra,* 94 U.S. at 439; *Matter of S & W, supra,* 16 B.R. at 941; *see also, American Woolen Co., supra,* 86 Conn. at 244; *Nichols v. Culver,* 51 Conn. 177, 181 (1883).

■ Apart from whether or not the trustee's payments from the estate's share of the proceeds are voluntary, it is clear that his proposed payments from the wife's share of the fund are, as they are to be made in accordance with a stipulation [9] under which the wife agreed to have the trustee distribute her share to ANB rather than pay her directly. *See* § 363(j). ANB must therefore apply the wife's payment as directed by the trustee, which will, as noted, pay Mediplex's lien in full, distribute to the debtor the full amount of his exemption, and make available $48,660.00 to unsecured creditors less any allowed priority claims.

### IV

For the foregoing reasons, ANB's objection to the trustee's proposed distribution is overruled, the trustee's application for distribution is approved, and

IT IS SO ORDERED.