[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Motion For Deficiency Judgment [117]
"The plaintiff, Farmers and Mechanics Bank, commenced this action by a writ dated January 23, 1992. The defendants are Connecticut Equity Finance and Norbert Pomeranz. The complaint requests the foreclosure of a mortgage dated February 4, 1991 in the original principal sum of $300,000. The note was secured by a mortgage signed by Connecticut Equity Finance and its two general partners, Norbert Pomeranz and Joseph Marino. The mortgage secured six residential lots in a subdivision located on Red School House Road in Colchester, Connecticut.
"On January 4, 1993, the court entered a judgment of strict foreclosure and set February 1, 1993 as the law day for Connecticut Equity Finance. The plaintiff and defendant stipulated to the amount of the debt and the value of the property for the purpose of the judgment of foreclosure; but agreed that the debt and the value of the property could be disputed at the time of a hearing on a motion for deficiency judgment. On February 22, 1993, the plaintiff filed a motion for deficiency judgment and a hearing on the motion was held on January 18, 1994." Defendants' Brief, April 23, 1992. [118]
The three issues raised by the defendants are discussed separately below.
 I
The plaintiff bank seeks a deficiency judgment against the defendant Connecticut Equity Finance [Connecticut Equity] and CT Page 6915 the defendant Pomeranz. The bank seeks a deficiency judgment against each of them for the full amount of the deficiency. The defendants claim they are entitled to a credit for payment(s) made by the other original maker and partner, Marino, not a defendant herein. Marino and the plaintiff made a settlement in December 1991. At that time, the defendants and Marino owed the plaintiff (1) $400,000 on an unsecured line of credit, (2) $277,000 secured by property located in Durham, and, (3) close to $300,000 secured by the Colchester property which is the subject of this foreclosure. The settlement agreement, Exhibit 1, provided that in return for plaintiff's covenant not to sue Marino, Marino would pay the bank $120,000 ($100,000 and a $20,000 note.
A bank officer testified that the cash and note received from Marino were applied to the $400,000 debt, which debt was totally unsecured. There was no evidence to the contrary. Under our law the plaintiff was entitled to apply the amount received from Marino in the manner it chose since neither Marino or the settlement agreement had designated the particular debt to which it must be applied. American Woolen Co. v. Maaget, 88 Conn. 234
(1912): In re Custer, 88 B.R. 573 (Bkrtcy. D. Conn. 1988).
The court therefore concludes that the defendants Connecticut Equity and Pomeranz are not entitled to any relief in this proceeding by virtue of Marino's payment (s).
 II
The defendants Connecticut Equity and Pomeranz claim that in 1991, Pomeranz had agreed to convey the Colchester property to the bank, and therefore, interest should not be allowed the bank since that date. However, the uncontradicted testimony was that the offer to convey the property was not an unconditional offer but had several strings attached. Furthermore, although the defendants claim that the property had a value far more than the debt at that time, the proof thereon was lacking. Although the bank did have an appraisal showing the property was then worth $323,000, there was no proof offered to show that that appraisal had validity. In fact, the bank's evidence, which was uncontroverted, was that the property even at that time was "under water".
The court concludes that the defendants are not entitled to any consideration here by virtue of the alleged offer to convey CT Page 6916 the subject property to the bank.
 III
Finally, Connecticut Equity and Pomeranz challenge the bank's contention that the value of the property at the time it took title, February 3, 1993, was only $190,000. The only testimony regarding February 1993 value of the property came from the bank's appraiser, Atkins. He testified that the gross value of the properties, six building lots, was $250,000. Atkins estimated it would take a year to realize that amount. To determine the value as of the time of transfer Atkins subtracted the sale expenses including commissions and closing costs, real estate taxes, developer's profit, etc. He therefore testified that the value as of the time of transfer, February 1993, was $190,000.
Defendants argue that this method was inappropriate. Defendants presented neither testimony or authority that this method was incorrect. The court finds the method reasonable.
The court finds that the value of the subject property was $190,000 when title vested in plaintiff
 IV
The deficiency is determined as follows:
Judgment debt (1/4/93) $359,082.14
 Interest from date of judgment to date of title vesting, 1/4/93 to 2/3/93 2,094.60
 Interest @ 10% per year on debt less value of property after title vested to date of deficiency judgment, 2/4/93 to 7/20/94 (532 days), i.e $169,082.14 X .10 x 532/365 = 24,642.24
 Appraiser fees and costs 3,303.20 (previously allowed)
Attorneys' fees (previously allowed) 2,100.00
Property tax advance 8,778.69 CT Page 6917
Total debt 400,000.87
Value of property 190,000.00
Deficiency 210,000.87
Additional appraiser's fee 900.00
Additional attorneys' fee 5,200.00
TOTAL DEFICIENCY $216,100.87
 V
A deficiency judgment shall enter in favor of the plaintiff in the amount of $216,100.87.
Parker, J.