| ITEM | SCHEDULE J | EXHIBIT B | EXHIBIT 4 | ALLOWED |
|---|---|---|---|---|
| Cable | 59 | 25 | 28 | 25 |
| Home Maintenance | 80 | 80 | 80 | 80 |
| Food | 600 | 300 | 366 | 366 |
| Clothing | 200 | 50 | 175 | 100 |
| Laundry/Drycleaning | 0 | 0 | 96 | 50 |
| Medical | 200 | 100 | 200 | 200 |
| Transportation | 200 | 150 | 175 | 150 |
| Recreation | 50 | 50 | 50 | 50 |
| Home Insurance | 38 | 38 | 38 | 38 |
| Life Insurance | 145 | 0 | 180 | 0 |
| Auto Insurance | 194 | 100 | 177 | 177 |
| Taxes | 50 | 0 | 98 | 0 |
| Ranger Installments | 365 | 300 | 365 | 365 |
| Taurus Installments | 471 | 300 | 471 | 471 |
| Second Mortgage | 519 | 519 | 519 | 519 |
| Business | 401 | 401 | 499 | 499 |
| Dining | — | — | 175 | 125 |
| Home Owner Association Dues | 105 | 105 | 105 | 105 |
| Auto Licensing | 25 | 25 | 25 | 25 |
| Personal | 40 | 40 | 40 | 40 |
| **TOTAL** | 4988 | 3604 | 4925 | 4448 |

**In re Karl GERWER, Debtor.**

**Karl Gerwer, Appellant,**

**v.**

**Milton Salzman, Appellee.**

**BAP No. CC–99–1750MoPB.
Bankruptcy No. SV–87–04803–KL.
Adversary No. SV–97–02037–KL.**

United States Bankruptcy Appellate Panel
of the Ninth Circuit.

Argued and Submitted July 19, 2000.

Decided Aug. 28, 2000.

Gary J. Miller, Miller & Miller, Encino, CA, for Karl Gerwer.

Russell H. Rapoport, Plotkin, Rapoport & Nahmias, P.C., Encino, CA, for Milton Salzman.

Before: MONTALI, PERRIS and BRANDT, Bankruptcy Judges.

## OPINION

MONTALI, Bankruptcy Judge.

A debtor appeals from a declaratory judgment allowing a creditor to allocate a distribution from the debtor's Chapter 7 estate against the dischargeable portion of the debtor's obligation to the creditor. The debtor requests that the payment be used to satisfy the nondischargeable portion of the debt. The panel AFFIRMS.

## I.

### FACTS

Appellant, Karl Gerwer ("Gerwer"), is a debtor under Chapter 7 of the Bankruptcy Code. Appellee, Milton Salzman ("Salzman"), filed a nondischargeability adversary proceeding against Gerwer pursuant to 11 U.S.C. § 523.[1] On the day of the

---

1. Unless otherwise indicated, all section and rule references are to the Bankruptcy Code,

trial of the nondischargeability action, Gerwer and Salzman entered into a stipulation to resolve the matter. The bankruptcy court thereafter approved a stipulated judgment (the "Stipulated Judgment") in favor of Salzman in the amount of $800,000; that amount was declared nondischargeable. Thereafter, Salzman filed a proof of claim for the same debt which was the subject of the nondischargeability action, although the claim included amounts exceeding the $800,000 Stipulated Judgment.

The Stipulated Judgment provided for a stay of execution if Debtor made quarterly payments commencing July 1, 1989; the payment schedule and amounts were set forth in the Stipulated Judgment. In the event Gerwer defaulted in paying the quarterly installments, Salzman could take action to terminate the stay of execution and thereafter enforce the $800,000 judgment.[2] If, however, Gerwer paid Salzman $250,000 plus interest (the "Settlement Sum"), Salzman would execute an acknowledgment of full satisfaction of the Stipulated Judgment:

> If, without the stay on execution ... being terminated, [Gerwer] pays to [Salzman] the sum of ... ($250,000.00), plus ten percent (10%) simple interest on the unpaid balance from March 9, 1989, through the date of full payment ("the Settlement Sum"), this judgment shall be deemed fully satisfied, and [Salzman] shall file with the Court an acknowledgment of full satisfaction of this judgment. In connection with [Gerwer's] payment of the Settlement Sum, unless a default as provided for hereinbelow occurs, *all of the quarterly payments* set forth hereinbelow shall be first applied to interest on the unpaid balance of the Settlement Sum and the remainder, if any, shall be applied to the unpaid principal balance of the Settlement Sum.

(Emphasis added). As acknowledged by Gerwer in his appellate brief, the Stipulated Judgment contains no provision for the allocation of any payments from third party sources such as the Chapter 7 trustee.

Salzman filed a proof of claim in the bankruptcy court and Gerwer filed claims on Salzman's behalf; the Chapter 7 trustee objected to these claims. Approximately eight years after entry of the Stipulated Judgment, the bankruptcy court entered an order allowing Salzman a non-priority general unsecured claim in the amount of $1,055,729.18 (the "Allowed Claim"). This claim consists of the (1) the Settlement Sum ($250,000 plus interest); (2) the balance ($550,000) of the Stipulated Judgment after deduction of the Settlement Sum; and (3) the dischargeable sum of $255,729.18 ("Dischargeable Sum") exceeding the $800,000 nondischargeable Stipulated Judgment.

The Chapter 7 trustee of Gerwer's estate paid Salzman a pro rata distribution of $84,453.18 from Gerwer's estate (the "Estate Distribution"). Salzman indicated that he would allocate the Estate Distribution to pay the Dischargeable Sum of the Allowed Claim. Gerwer therefore filed this adversary proceeding, requesting a declaratory judgment requiring Salzman to allocate the Estate Distribution to pay the Settlement Sum. Initially, the court below dismissed Gerwer's claims with prejudice, holding that "the language of the stipulation precludes the interpretation" of Gerwer, namely that the Stipulated Judgment required application of the Estate Distribution to the Settlement Sum. Following appeal of that order, another panel of this court reversed and remanded, noting that Gerwer should be given an oppor-

11 U.S.C. §§ 101–1330 and the Federal Rules of Bankruptcy Procedure, Rules 1001–9036.

**2.** The Stipulated Judgment provided that the "sole and exclusive exception to the foregoing default remedy" would be Gerwer's inability to make a quarterly payment of at least $2500 due to his incarceration (if any).

tunity to amend his complaint to allege extrinsic facts regarding intent. After remand, Gerwer amended his complaint to allege that the language of the Stipulated Judgment "mean[t] that any monies paid to Salzman on account of the Stipulated Judgment from whatever source are to be fully credited toward satisfaction of the Settlement Sum." [3]

Subsequently, the parties filed cross-motions for summary judgment. [4] Even though Gerwer repeated his argument that the language of the Stipulated Judgment required application of any payment against the Settlement Sum, he acknowledged that "The Stipulated Judgment contains no provision for or reference to the allocation or non-allocation of payments from third party sources to Salzman on account thereof." After concessions by the parties at oral argument that no meeting of the minds occurred with respect to the allocation of payments from third-party sources, the court stated:

> It has been argued that there is a contractual obligation. Now, we're all familiar with the contract, and the contract, we all agree there was no express discussion of this issue. If there was no discussion, if there was no meeting of the minds, then it seems to me that plaintiff cannot bear its burden of proof to prove that there was a mutual agreement (regarding application of third party payments).

The court also emphasized that Gerwer did not make the payment, but that the trustee made the distribution from estate assets: " ... I think it is an extremely important part of my analysis that Mr. Gerwer and the bankruptcy estate are not the same parties, that the debtor didn't make this payment, the bankruptcy estate made a payment on a debt that the bankruptcy estate owed."

The bankruptcy court therefore entered a declaratory judgment in favor of Salzman, stating that "[Salzman's] application of the dividend received by him from the trustee in this bankruptcy case to the dischargeable loan debt was not improper and [Gerwer] is not entitled, by law or agreement, to require any credit to be given against the settlement sum on account of that dividend payment." The court further dismissed, with prejudice, Gerwer's claim for an accounting. Gerwer timely appealed the entry of the declaratory judgment, but did not appeal the dismissal of the accounting claim.

## II.

### ISSUE

Whether the bankruptcy court erred in entering judgment allowing Gerwer to allocate the Estate Distribution to him against the Dischargeable Sum. [5]

## III.

### STANDARD OF REVIEW

■ This appeal involves a pure question of law. No factual issue has been

---

3. The amended complaint set forth two grounds for relief: the first requested declaratory relief and the second requested the accounting. This appeal concerns only the first claim.

4. The parties filed cross-motions for summary judgment on the claim for declaratory judgment; the court initially indicated that it would grant Salzman's motion. Gerwer's counsel objected, because Salzman had not timely filed his motion. Gerwer's counsel, however, stipulated on the record that she would not object to entry of a declaratory judgment against Gerwer, as long as the court denied both motions for summary judgment. Both sides then agreed upon a procedure for disposing of the claim for accounting, resulting in a final order for appeal. The court denied both motions for summary judgment and entered a declaratory judgment against Gerwer.

5. Salzman argues that this is a frivolous appeal. The panel disagrees. Salzman stated in his appellate brief that this matter appears to be a case of first impression. Moreover, as discussed later, case authority does exist supporting the suggestion of Gerwer's counsel that the Estate Distribution be applied on a pro rata basis. Under these circumstances, the appeal is not frivolous.

presented to the panel. The panel reviews such legal issues under the *de novo* standard. *AT & T Universal Card Services v. Black (In re Black)*, 222 B.R. 896, 899 (9th Cir. BAP 1998). *See also United States v. Stanmock, Inc. (In re Stanmock, Inc.)*, 103 B.R. 228, 230 (9th Cir. BAP 1989) ("We review the question of whom has the authority to direct allocation of tax payments as a matter of law.").

■■■ A grant of summary judgment is subject to *de novo* review. *C.F. Brookside, Ltd. v. Skyview Memorial Lawn Cemetery (In re Affordable Housing Development Corp.)*, 175 B.R. 324, 328 (9th Cir. BAP 1994). Questions of contract interpretation are subject to *de novo* review unless extrinsic evidence was introduced on issues such as intent. *Ankeny v. Meyer (In re Ankeny)*, 184 B.R. 64, 68 (9th Cir. BAP 1995).

## IV.

## DISCUSSION

A. *As A Matter of Law, Salzman Had the Right to Direct Allocation of the Estate Distribution*

The United States Supreme Court long ago acknowledged the general proposition governing allocation of payments:

> In the general proposition upon this subject, all the courts agree. It is this:— 'That the *party paying* may direct to what the application is to be made. If he waives his right, the party receiving may select the object of appropriation. If both are silent, the law must decide.'

*Jones v. United States*, 48 U.S. 681, 688, 7 How. 681, 12 L.Ed. 870 (1849) (emphasis added). This general rule of law applies in the bankruptcy context as well:

> The law regarding the allocation of payments is well settled. A debtor making a *voluntary* payment has the absolute right to have that payment allocated among various obligations in accordance with his or her instructions. [Numerous citations omitted]. If the debtor does

not direct the allocation of that payment, the creditor will have that right and may make the allocation to its advantage. [Numerous citations omitted].

*In re Custer*, 88 B.R. 573, 575–76 (Bankr. D.Conn.1988) (emphasis added).

California statutory law is consistent with this general principle:

> Where a debtor, under several obligations to another, *does an act*, by way of performance ... the performance must be applied as follows:
>
> One—If, at the time of performance, the intention or desire of the debtor that such performance should be applied to the extinction of any particular obligation, be manifested to the creditor, it must be so applied.
>
> Two—If no such application be then made, the creditor, within a reasonable time after such performance, may apply it toward the extinction of any obligation, performance of which was due to him from the debtor at the time of such performance ...

Cal.Civ.Code § 1479 (emphasis added).

■■■ The foregoing precepts require a debtor to make a voluntary payment in order to direct its allocation. In *Jones*, the "party paying" may direct allocation; in *Custer*, a debtor making a "voluntary payment" may do so; in California Civil Code section 1479, a debtor who *does the act* (i.e., makes the payment) may do so. In this case, the debtor (Gerwer) was not the party making the payment; rather, the Chapter 7 trustee made the distribution from estate assets. Because Gerwer did not make the payment and therefore cannot direct its allocation, Salzman (as creditor) had the right to allocate the distribution as he so determined.

■■■ In any event, the Estate Distribution does not constitute a voluntary payment by Gerwer for which he could direct allocation. *Custer*, 88 B.R. at 575; *see also Brunswick Corp. v. Hays*, 93 Cal. Rptr. 635, 16 Cal.App.3d 134 (1971) (Civil

Code section 1479 does not allow debtor to direct application of payment where payment was not "voluntary performance" by debtor). In this case, the payment was made in a bankruptcy liquidation by a trustee. We have held that a payment made in a bankruptcy case is involuntary: "Thus, the majority of courts have found that payment in the context of a judicial proceeding, including bankruptcy, should be treated as involuntary." *Stanmock,* 103 B.R. at 234; *see also United States v. Technical Knockout Graphics, Inc. (In re Technical Knockout Graphics, Inc.),* 833 F.2d 797 (9th Cir.1987) (post-petition payments by a debtor in bankruptcy were not "voluntary" and debtor could not direct allocation; creditor was entitled as it "sees fit"); *United States v. Condel, Inc. (In re Condel, Inc.),* 91 B.R. 79, 82 (9th Cir. BAP 1988) (same).

Because the Estate Distribution was an involuntary payment, neither Gerwer nor the Chapter 7 trustee may direct its allocation and, by default, Salzman can. "Voluntary payments from a debtor must be applied as the debtor directs. [Citations omitted.] That rule does not apply to involuntary payments, however, which may be applied as the creditor wishes." *Baxter State Bank v. Bernhardt,* 985 F.Supp. 1259, 1269 (D.Kan.1997); *see also Technical Knockout,* 833 F.2d at 801–803; *Condel,* 91 B.R. at 82. As a matter of law, Salzman was entitled to allocate payment to the dischargeable portion of the debt.

Several courts, including the Ninth Circuit, have addressed the allocation of payments issue in the context of bankruptcy. In these cases, the creditor was the Internal Revenue Service (the "IRS"), and the payments had been made while the bank-

ruptcy case of the taxpayer was pending. In general, the courts have held that post-petition payments are not voluntary and a debtor cannot direct allocation.[6] Instead, the creditor (the IRS) can apply the payments as it "sees fit." *Technical Knockout,* 833 F.2d at 801–803; *Condel,* 91 B.R. at 82. Salzman has cited another tax case, *Bishop v. United States (In re Leonard),* 132 B.R. 226 (Bankr.D.Conn.1991), but that case does not contain an analysis of the law of allocation of payments. The cases of *Condel* and *Technical Knockout* are more on point, are authority in this circuit and are thus more persuasive.

Both Gerwer and Salzman state that this appeal involves an issue of first impression. They are incorrect. While most of the cases addressing the allocation of payments involve the ability of the Internal Revenue Service to apply payments against non-trust fund obligations (*see, e.g., Technical Knockout* and *Condel*), the panel has found at least two decisions involving the allocation of payments with respect to non-tax claims that are dischargeable in part and nondischargeable in part. Neither case, however, is persuasive, inasmuch as the decisions are based on policy considerations and do not address the foregoing applicable legal principles governing allocation of payments.

In *Jennen v. Hunter (In re Hunter),* 771 F.2d 1126 (8th Cir.1985), the bankruptcy court found that a creditor's claim was nondischargeable in part and dischargeable in part, and then applied proceeds of a prebankruptcy mortgage foreclosure entirely against the nondischargeable debt. The district court reversed, holding that the proceeds would

---

**6.** The Supreme Court has carved out an exception to the general rule governing involuntary payments, but the exception does not apply in this case. In *United States v. Energy Resources Co., Inc.,* 495 U.S. 545, 549, 110 S.Ct. 2139, 109 L.Ed.2d 580 (1990), the Supreme Court held that even where tax payments under a plan of reorganization are involuntary, "a bankruptcy court has the authority to order the IRS to apply the pay-

ments to trust fund liabilities if the bankruptcy court determines that this designation is necessary to the success of a reorganization plan." No plan of reorganization exists in Gerwer's Chapter 7 case; accordingly, a court-ordered allocation of payment is not necessary to the success of a plan. The narrow exception of *Energy Resources* is not implicated here.

be allocated between the nondischargeable portion and the dischargeable portion on a proportionate basis. The Eighth Circuit agreed with the district court's proportionate apportionment of the proceeds, noting that application of the full payment against the nondischargeable portion (in this case, the Settlement Sum) would "unjustly reward" the debtor and "penalize" the creditor. The court then notes that application of all of the proceeds against the dischargeable debt would hinder a debtor's "fresh start." Without addressing the legal precepts governing allocation of involuntary payments, the court merely concluded as a matter of policy that apportionment of the payment between the nondischargeable portion and the dischargeable portion is the "best remedy suited to the harm." *Hunter*, 771 F.2d at 1129–30.

Following *Hunter*, the court in *Peterson v. Bozzano (In re Bozzano)*, 183 B.R. 735 (Bankr.M.D.N.C.1995), held that third-party payments would be credited pro rata between dischargeable and nondischargeable portions of the debtor's obligation. In addressing the issue of application of the payment, the *Bozzano* court stated:

> In reaching this issue, we have left the realm of state law. Dischargeability is uniquely a bankruptcy question and questions regarding the dischargeability of debts are questions of federal bankruptcy law. Determination of whether particular debts arising under state law are dischargeable or nondischargeable is made under federal bankruptcy law.... In the present case the bifurcation of the damages awarded against Debtor occurs solely as a result of the particular provisions of § 523(a)(2)(A) and the fact that under those provisions a portion of the damages are nondischargeable. This is strictly a matter of bankruptcy law, as is the issue of how to apply the payments received by the plaintiffs which is something that must be done in order for the actual amount of the non-dischargeable obligation to be determined.

*Id.* at 739. Having concluded that allocation of payments in this context is a matter of bankruptcy law and not state law, the *Bozzano* court followed the reasoning of *Hunter* and allocated the payment proportionately between the nondischargeable debt and the dischargeable debt.

The panel, while it appreciates the logic of *Hunter* and *Bozzano*, will apply the general legal precepts governing allocation of payments. The apportionment remedy appears to be an equitable remedy, and the Ninth Circuit has held that bankruptcy courts lack the equitable jurisdiction to direct application of involuntary payments by a debtor. *Technical Knockout*, 833 F.2d at 803. Therefore, applying the law of allocation, the creditor (i.e., Salzman) may apply the Estate Distribution against the dischargeable portion of Gerwer's obligation to him. The panel accordingly affirms.

B. *The Language of the Stipulated Judgment Did Not Require Application of the Estate Distribution to the Nondischargeable Sum*

The bankruptcy court held that Gerwer was not entitled "by law or agreement" to have the Estate Distribution applied against the Dischargeable Sum. This holding is consistent with Gerwer's admission that the "Stipulated Judgment contains no provision for or reference to the allocation or non-allocation of payment from third party sources to Salzman on account thereof." Because no provision governed allocation of payments by the third party Chapter 7 trustee, the court's holding is correct.

As discussed in Part II(A) above, the court appropriately held that the law did not support Gerwer's argument that he is entitled to direct allocation of the payment to the nondischargeable portion of his obligation to Salzman. The court also properly held that the contract, i.e., the Stipulated Judgment, also did not require

such an allocation. When interpreting terms of a contract, a bankruptcy court must follow California law governing interpretation. *Affordable Housing,* 175 B.R. at 329.

 Under California law, a contract must be interpreted to give effect to the mutual intention of the parties as it existed at the time of contracting. Cal.Civ.Code § 1636. The language of a contract is to govern its interpretation, if the language is clear and explicit and does not involve an absurdity. Cal.Civ.Code § 1638. When a contract is reduced to writing, the intention of the parties is to be determined from the writing alone, if possible. Cal. Civ.Code § 1639. In this case, the language of the Stipulated Judgment clearly provides how Salzman will apply the quarterly payments contemplated by the contract. The contract contains no provision governing allocation of payments other than those quarterly payments, and the bankruptcy court correctly held that the agreement (i.e., the Stipulated Judgment) does not require Salzman to yield to Gerwer's demands regarding allocation of the Estate Distribution.

## V.

## CONCLUSION

Because Salzman is entitled to allocate the Estate Distribution as he "sees fit" (*Technical Knockout,* 833 F.2d at 803) as a matter of law, the bankruptcy court did not err in granting him summary judgment. Consequently, the decision of the bankruptcy court is AFFIRMED.