# FILED

NOT FOR PUBLICATION

SEP 30 2021

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

## UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>SUNNY HILLS AQUATIC CLUB, A<br>CORPORATION,<br><br>           Debtor. | BAP Nos. NC-20-1253-SFB<br>NC-20-1276-SFB<br><br>Bk. No.  20-41077 |
| HADI ZEGHUZI,<br>           Appellant,<br>v.<br>SUNNY HILLS AQUATIC CLUB, A<br>CORPORATION,<br>           Appellee. | **MEMORANDUM**[*] |

Appeal from the United States Bankruptcy Court
for the Northern District of California
Charles D. Novack, Chief Bankruptcy Judge, Presiding

Before: SPRAKER, FARIS, and BRAND, Bankruptcy Judges.

## INTRODUCTION

Hadi Zeghuzi appeals the bankruptcy court's order sustaining the

claim objection filed by debtor Sunny Hills Aquatic Club, a California

---

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

Corporation ("Aquatic Club"). He also appeals from an order confirming the Aquatic Club's amended chapter 11[1] plan.

Both appeals hinge on the proper construction of a state court stipulated judgment defining Zeghuzi's rights with respect to the Aquatic Club and its assets. The parties agree that the stipulated judgment converted Zeghuzi's former membership interest in the Aquatic Club into a right to payment ("Payment Right"). Zeghuzi recorded a certified copy of the stipulated judgment. He maintains that, as a result, he held a judgment lien against the Aquatic Club's real property that was payable when the estate sold that property.

The bankruptcy court disagreed and ruled that Zeghuzi was not entitled to his Payment Right until dissolution of the Aquatic Club. The court also sustained the objection to his claim, holding that it was not payable ahead of general unsecured creditors. The court then confirmed the Aquatic Club's liquidating plan over Zeghuzi's objection. The liquidating plan provided for Zeghuzi to receive a pro rata distribution with the members upon the dissolution of the corporation. The court concluded that this was precisely what Zeghuzi bargained for when he entered into the stipulated judgment.

We agree with the bankruptcy court's construction of the stipulated judgment, so we AFFIRM.

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532.

According to Zeghuzi, the Aquatic Club was formed in 1956 and currently has 12 members, all of whom are successors to the original founders. At the time of its bankruptcy filing, the Aquatic Club's assets consisted of a swimming pool on 1.9 acres of land in Walnut Creek, California.

Zeghuzi states that he joined the Aquatic Club as a member in 2001. He claims that for years thereafter he held all positions on the Aquatic Club's board of directors and performed all needed repairs, maintenance, and services related to the pool and the surrounding real property.

## A. The state court litigation and stipulated judgment.

In 2016, the Aquatic Club sued Zeghuzi for misappropriation of monies and the wrongful transfer of its real property. The state court granted the Aquatic Club a preliminary injunction against Zeghuzi and his company, Swim Shac, LLC, which prohibited them from: (1) attempting to occupy, transfer or otherwise interfere with the Aquatic Club's real property; (2) accessing or misappropriating the Aquatic Club's cash; and (3) accessing, forwarding, or tampering with the Aquatic Club's mail.

The parties reached a settlement in the form of a stipulated judgment with the assistance of a mediator. The parties incorporated the preliminary injunction into the stipulated judgment, which made the injunctive relief

---

[2] We exercise our discretion to take judicial notice of the docket in the underlying bankruptcy case and the documents electronically filed in that case. *See Atwood v. Chase*

permanent. The stipulated judgment furthermore cancelled and declared "void ab initio" the grant deed Zeghuzi purported to execute on behalf of the Aquatic Club transferring title to the real property to Swim Shac or Zeghuzi. The stipulated judgment also restricted Zeghuzi's contact with the Aquatic Club and provided that each side in the dispute would bear its own attorney's fees and costs.

Finally, and most importantly, the stipulated judgment defined Zeghuzi's Payment Right:

4.      If Sunny Hills Aquatic Club is dissolved or sold Hadi Zeghuzi shall receive a pro-rata share of net proceeds after all costs of sale, commissions, expenses of sale/dissolution including debts and encumbrances are paid.

At the state court settlement hearing, the court had the parties recite each settlement term by number. The court requested that the parties listen carefully and verbally indicate their acceptance of each term. As to some terms, Zeghuzi made comments or asked for clarifications or refinement of the settlement language. When it came time to discuss paragraph 4, the mediator began by saying that this paragraph applied if the "pool" was dissolved or sold. The court then inquired whether the mediator's reference to the "pool" actually meant "Sunny Hills Aquatic Club, Inc." The mediator responded that the court was correct. The court then asked both the Aquatic Club and Zeghuzi whether they both agreed with paragraph 4. Both parties stated their agreement with that term. Zeghuzi

_Manhattan Mortg. Co. (In re Atwood)_, 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

5

agreed but wanted to add to paragraph 4 another trigger for his Payment Right: if there was a change of ownership "in addition to sale of the property." The mediator explained that a change of ownership was not part of the agreed terms for paragraph 4. Then, the court asked both parties to affirm that they agreed that the contingency specified in paragraph 4 was limited to sale or dissolution, which they did.

The court then went through the rest of the settlement provisions, asking each side to confirm their agreement as to each of those terms, which they did. The court emphasized that because Zeghuzi was appearing pro se, it wanted to make sure that he was entering into the settlement voluntarily and of his own free will. Zeghuzi stated that he was.

Near the conclusion of the settlement hearing, the Aquatic Club's counsel wanted to make sure that, on the record, Zeghuzi expressed his acceptance of the Payment Right as his only claim or interest with respect to the Aquatic Club. As counsel explained it, Zeghuzi was entitled to "a **pro rata membership share** of proceeds if it sells or dissolves." (Emphasis added.) But he emphasized that Zeghuzi had no other rights as a member of the Aquatic Club other than the Payment Right. At this point, Zeghuzi requested a clarification. He wanted to make sure that the Aquatic Club's current board and all future boards were bound by the settlement, which the court and the Aquatic Club confirmed. Zeghuzi did not question or dispute that his Payment Right was the same monetarily as what other members were entitled to receive once the Aquatic Club was wound up.

In November 2018, the court entered the stipulated judgment. In December 2018, Zeghuzi recorded a certified copy of the stipulated judgment in the Contra Costa County Recorder's Office.

**B.    The Aquatic Club's bankruptcy and the objection to Zeghuzi's proof of claim.**

In 2019 or 2020, the Aquatic Club's board voted to sell its real property and dissolve. Ultimately, it was unable to close the sale because no title insurance company was willing to issue a policy of title insurance unless Zeghuzi executed a quitclaim deed or otherwise relinquished any lien interest he obtained by recording the stipulated judgment. According to the Aquatic Club, Zeghuzi demanded that he be paid the amount he claimed he was owed under the stipulated judgment at the time the sale closed. The Aquatic Club declined. Zeghuzi refused to execute the quitclaim deed. As a result, the Aquatic Club was unable to sell the real property.

The Aquatic Club filed a bankruptcy petition in June 2020 under subchapter V of chapter 11 in order to sell the real property. The Aquatic Club sought and obtained bankruptcy court approval to sell the property free and clear of whatever interest Zeghuzi might have in the property.

Zeghuzi did not appeal the sale order, but he did file a proof of claim. He listed the amount of his claim as $42,307.69 and stated that the claim

was secured by a lien arising from his recording of the stipulated judgment.[3]

The Aquatic Club objected to Zeghuzi's proof of claim. It acknowledged Zeghuzi's right to share in the net proceeds of the sale upon dissolution of the Aquatic Club in *pari passu* with its members. But it disputed that the recordation of the stipulated judgment resulted in a lien in favor of Zeghuzi.

The Aquatic Club also objected to Zeghuzi's contention that he was entitled to payment before the winding up of the Aquatic Club's business affairs. According to the Aquatic Club, pursuant to paragraph 4 of the stipulated judgment, all of its expenses and debts were to be paid before its members and Zeghuzi could receive their pro rata shares of the net proceeds. As it explained, Zeghuzi agreed to be paid only after payment of the Aquatic Club's expenses and debts, and that could only happen upon dissolution. The Aquatic Club contended that Zeghuzi agreed by way of the stipulated judgment to subordinate his Payment Right to the Aquatic Club's other debts and that this agreement was enforceable under § 510(a). The Aquatic Club argued that neither the members nor Zeghuzi could receive a distribution until its debts were paid.

The Aquatic Club additionally challenged the amount of Zeghuzi's claim. It argued that Zeghuzi's stated claim exceeded the pro rata amount

---

[3] Zeghuzi also filed a proof of claim on behalf of Swim Shac but that claim later was disallowed. He did not appeal the disallowance of Swim Shac's claim.

each member likely would receive after payment of all of the Aquatic Club's expenses and debts.

Zeghuzi responded to the claim objection. He contended that recording the stipulated judgment created a judgment lien against the Aquatic Club's real property for the amount he was owed as his Payment Right. In his response, Zeghuzi calculated his claim as: $600,000 in sale proceeds, less $50,000 in estimated costs of sale, divided by 13 members, equals $42,306.69.

The Aquatic Club replied that pursuant to paragraph 4 of the stipulated judgment, Zeghuzi had agreed to subordinate his Payment Right to the Aquatic Club's other debts. It also argued that recording the stipulated judgment did not create a lien against the Aquatic Club's real property. In the alternative, the Aquatic Club contended, even if the recordation did create a lien, that lien did not entitle Zeghuzi to any larger share of the proceeds than as provided for in paragraph 4 of the stipulated judgment.

The court held a hearing on the claim objection. Zeghuzi expressed his concern that the Aquatic Club might never dissolve, so it might never honor his Payment Right. But when the court inquired about the Aquatic Club's intentions regarding dissolution, the Aquatic Club explained that it intended to effect the dissolution as soon as practicable after completion of its plan and the filing of its final tax return.

On the one hand, Zeghuzi admitted during the hearing that his Payment Right entitled him to share in *pari passu* with the Aquatic Club's members. On the other hand, he claimed that his Payment Right had priority over $200,000 in secured debt. According to Zeghuzi, the entire $200,000 was used by the Aquatic Club for legal expenses in the state court lawsuit and charging him a share of this debt was at odds with the stipulated judgment provision that each party needed to bear their own fees incurred in litigating the state court lawsuit.[4]

Ultimately, the bankruptcy court sustained the Aquatic Club's claim objection. The court held that Zeghuzi's claim was subordinated to the extent provided in the stipulated judgment. The court also rejected Zeghuzi's contention that his claim was payable upon the sale of the Aquatic Club's real property based on the specific reference to the sale or dissolution of the Aquatic Club in the stipulated judgment, and as confirmed by the state court at the settlement hearing.

The bankruptcy court entered its order sustaining the Aquatic Club's objection to Zeghuzi's proof of claim. Zeghuzi timely appealed that order.

---

[4] Zeghuzi continues to take issue with the Aquatic Club's $200,000 secured debt, which was paid off upon the close of the Aquatic Club's sale of the real property, in accordance with the terms of the bankruptcy court's sale order. The validity of the $200,000 debt and the propriety of its repayment are beyond the scope of this appeal.

## C. The plan proceedings.

Shortly after the claim objection hearing, the Aquatic Club amended its plan. The plan as amended provided that the $347,485 in net proceeds from the sale of its real property would be used to pay all priority and unsecured creditors in full, except for Zeghuzi's subordinated claim, and the residue would be paid in pro rata shares to the Aquatic Club's members and Zeghuzi as contemplated in the stipulated judgment.

As for timing, the amended plan provided for non-subordinated creditor payments to be made on the plan's effective date and final distributions to members and Zeghuzi as soon as the Aquatic Club could wind up its affairs, file its final tax return, and effect its dissolution. The amended plan further represented that the Aquatic Club's board already had unanimously voted to dissolve as soon as practicable.

In an attempt to address Zeghuzi's point that the stipulated judgment provided for each side to bear their own attorney's fees incurred in the state court litigation, the Aquatic Club stated that $78,772 of the $200,000 formerly borrowed (and paid off at the time of sale) was attributable to its attorney's fees in the state court lawsuit against Zeghuzi. The Aquatic Club proposed in its plan to credit Zeghuzi for his pro rata share of this amount by paying him $6,059 ($78,772 divided by 13) on the plan's effective date. As the amended plan explained, this additional sum was the economic equivalent of adding back in the $78,772 to the pre-dissolution residue (or net equity) before calculating Zeghuzi's pro rata share.

Nonetheless, Zeghuzi objected to the amended plan. Zeghuzi raised several different concerns, but he has abandoned all of them on appeal except for one: because his Payment Right was secured by a judgment lien, the amended plan did not provide an adequate distribution on account of his claim. Rather, Zeghuzi effectively contended that the amended plan impaired his contractual rights inasmuch as he was not receiving what the stipulated judgment entitled him to: a priority lien claim subject only to the costs of sale of the Aquatic Club's real property.

The Aquatic Club responded that Zeghuzi would be paid under the amended plan the entire amount to which he was entitled in accordance with the stipulated judgment and the order sustaining the Aquatic Club's objection to his claim. As the Aquatic Club noted, regardless of whether Zeghuzi held a judgment lien securing his Payment Right, that lien did not entitle him to a greater share of the Aquatic Club's net proceeds than what was specified in paragraph 4 of the stipulated judgment: a pro rata share of the net proceeds after payment of all other creditors, upon dissolution of the Aquatic Club.

At the plan confirmation hearing, the court declined to determine whether Zeghuzi held a judgment lien based on his recording of the stipulated judgment. Instead, the court held that regardless of whether he held a lien, the amended plan did not alter or impair the amount or timing of his Payment Right. As the bankruptcy court explained, the plain language of the stipulated judgment entitled Zeghuzi to share in *pari passu*

12

with the Aquatic Club's members — but only after the Aquatic Club's expenses and debts had been paid in full.

The court entered its plan confirmation order. Zeghuzi timely appealed the confirmation order.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(B) and (L). We have jurisdiction under 28 U.S.C. § 158.

## ISSUES

1. Did the bankruptcy court err when it sustained the Aquatic Club's objection to Zeghuzi's claim?

2. Did the bankruptcy court err when it confirmed the Aquatic Club's plan over Zeghuzi's objection?

## STANDARD OF REVIEW

Our decision in these appeals turns on our construction of the state court's stipulated judgment. In California, stipulated judgments have been recognized as having the attributes of both a contract entered into by the parties and a judgment entered by the court. See *Cal. State Auto. Ass'n Inter-Ins. Bureau v. Super. Ct.*, 50 Cal. 3d 658, 663-64 (1990). Consequently, courts applying California law typically apply standard contract construction principles to interpret them. *See, e.g., In re Marriage of Schu*, 231 Cal. App. 4th 394, 399 (2014) (applying general contract construction principles to a stipulated judgment); *Gerwer v. Salzman (In re Gerwer)*, 253 B.R. 66, 73 (9th

Cir. BAP 2000) (same); *Landeros v. Pankey*, 39 Cal. App. 4th 1167, 1172 (1995) (same).

Because the parties presented no disputed extrinsic evidence regarding the meaning of the stipulated judgment, the task of interpreting it is a question of law, which we review de novo. *L.K. Comstock & Co. v. United Eng'rs & Constructors Inc.*, 880 F.2d 219, 221 (9th Cir. 1989); *see also DVD Copy Control Ass'n, Inc. v. Kaleidescape, Inc.*, 176 Cal. App. 4th 697, 713 (2009) ("Our review of the trial court's interpretation of a contract generally presents a question of law for this court to determine anew."); *Founding Members of the Newport Beach Country Club v. Newport Beach Country Club, Inc.*, 109 Cal. App. 4th 944, 955-56 (2003) ("When no extrinsic evidence is introduced, or when the competent extrinsic evidence is not in conflict, the appellate court independently construes the contract.").

## DISCUSSION

**A.   Appeal from order sustaining claim objection.**

Zeghuzi contends that he holds a judgment lien as a result of his recording the stipulated judgment in the Contra Costa County Recorder's Office. He also claims that his Payment Right was subject to only one contingency, which was satisfied when the Aquatic Club sold its real property. Based on both his judgment lien and the satisfaction of the sale contingency, he reasons that his claim was entitled to priority over all other debts and expenses, except for those expenses directly necessary to sell the property. He estimated the closing costs at roughly $50,000.

14

Zeghuzi's contentions are meritless. Regardless of whether he held a judgment lien, the stipulated judgment unequivocally fixed the priority of Zeghuzi's Payment Right and set conditions for its repayment. Paragraph 4 of the stipulated judgment created the Payment Right and provided: "If Sunny Hills Aquatic Club is dissolved or sold Hadi Zeghuzi shall receive a pro rata share of net proceeds after all costs of sale, commissions, expenses of sale/dissolution including debts and encumbrances are paid." Whatever monetary claim Zeghuzi has against the Aquatic Club is defined by that sentence. When the language of a contract is "clear and explicit and does not involve an absurdity, the plain meaning governs." *Am. Alt. Ins. Corp. v. Super. Ct.*, 135 Cal. App. 4th 1239, 1245 (2006) (citing Cal. Civ. Code § 1638). Here, the meaning of paragraph 4 is plain and did not give Zeghuzi an immediate right to a sum certain senior to the Aquatic Club's creditors and other members.

1. **Zeghuzi's Payment Right was contingent on the sale or dissolution of the Aquatic Club.**

Zeghuzi's Payment Right is specifically contingent on the sale or dissolution of the **Aquatic Club.** Yet, Zeghuzi argues that his payment was triggered by the sale of the real property owned by the Aquatic Club. The parties' discussion of this term before the state court at the settlement hearing defeats this argument. As part of its review of every term in the stipulated judgment, the state court confirmed with both the mediator and the parties that they meant sale or dissolution of the Aquatic Club and not

15

merely the sale of the Aquatic Club's assets. Zeghuzi agreed that paragraph 4 was conditioned on the sale or dissolution of Aquatic Club and not a sale of the underlying real property.

Moreover, Zeghuzi's argument makes no sense in the context of the stipulated judgment. The calculation of the Payment Right is dependent on the final payment of the Aquatic Club's debts, exclusive of the attorney fees incurred in the state court litigation. The full amount of those debts remains unknown. As a result, they preclude calculation of any pro rata distribution owed to the members —at least until the Aquatic Club finishes winding up its business. The sale of the Aquatic Club's real property did not accomplish the winding up; rather, it merely was one step in that process.

The bankruptcy court did not err in holding that the sale of the Aquatic Club's real property did not trigger the Payment Right under the stipulated judgment.

**2.     Zeghuzi's Payment Right is payable after payment of the Aquatic Club's debts.**

The stipulated judgment provided in the broadest possible language for the Aquatic Club's debts and encumbrances to be paid before calculation of Zeghuzi's pro rata share of the residue. Again, Zeghuzi confirmed in open court at the settlement hearing that he was entitled to no more and no less than the Aquatic Club's other members. Under California law, these members cannot receive any distribution on account of their

respective equity interests unless and until the Aquatic Club's expenses and debts are fully repaid. *See Penasquitos, Inc. v. Super. Ct.*, 53 Cal. 3d 1180, 1191 (1991) (citing Cal. Corp. Code § 2004 and stating that "a corporation cannot distribute its assets, nor may it dissolve, until its officers have paid or made provision for all known debts and obligations").

In this sense, Zeghuzi's arguments contravene the plain language of the stipulated judgment. His Payment Right only can be determined after payment of the Aquatic Club's claims, yet he argues that he must be paid ahead of those claims. Moreover, he is entitled to the same pro rata interest as the remaining 12 members, but he claims that his interest is senior to the members' interest.

Assuming without deciding that recording the judgment created a judgment lien in Zeghuzi's favor, the terms of the stipulated judgment still govern his Payment Right. At best, Zeghuzi might have a lien claim for his pro rata share of any equity remaining after payment of the Aquatic Club's other debts.

Zeghuzi relies on *Ford Consumer Finance Co. v. McDonell (In re McDonell)*, 204 B.R. 976 (9th Cir. BAP 1996), *aff'd*, 164 F.3d 630 (9th Cir. 1998), to support his judgment lien argument. But nothing in *McDonell* even remotely supports his entitlement to anything other than a pro rata membership share on dissolution of the Aquatic Club. Nor does *McDonell* support his contention that he holds a judgment lien. In *McDonell*, there was no question that the subject judgment qualified as a money judgment

17

under California law. Here, in contrast, whether the stipulated judgment qualified as a money judgment is an issue subject to debate, but which both the bankruptcy court and this Panel have declined to resolve as irrelevant to ascertaining the priority and amount of Zeghuzi's Payment Right. Thus, *McDonell* is inapposite.

In sum, the bankruptcy court did not err in sustaining the objection to Zeghuzi's claim.

**B.      Appeal from the order confirming the Aquatic Club's amended plan.**

Zeghuzi asserts that his state law rights were impaired by the treatment afforded him under the Aquatic Club's amended plan. The amended plan provided for payment to Zeghuzi of a pro rata distribution of the remaining sale proceeds after payment of the Aquatic Club's expenses and debts. According to Zeghuzi, he is entitled to payment immediately of a pro rata share of the proceeds from sale of the Aquatic Club's real property net of the direct costs of sale.

As we explained above, Zeghuzi misconstrues the nature and priority of his Payment Right, which is governed by the plain language of the stipulated judgment. Zeghuzi is entitled to share in *pari passu* with the Aquatic Club's other members — after payment of the Aquatic Club's expenses and debts, and upon dissolution. The confirmed plan provides exactly that treatment. Accordingly, we reject as meritless Zeghuzi's appeal from the order confirming the Aquatic Club's amended plan.

**CONCLUSION**

Based on the foregoing, we AFFIRM the order sustaining the Aquatic Club's claim objection, and we also AFFIRM the bankruptcy court's order confirming the Aquatic Club's amended plan.